KHORSHID, INC., d/b/a Taxi Dallas,
and Nasser Mansourian,
Appellants,

v.

Uche CHRISTIAN, Appellee.

No. 05–07–00188–CV.

Court of Appeals of Texas,
Dallas.

April 14, 2008.

Supplemental Opinion May 16, 2008.

Rehearing Overruled July 17, 2008.

Gregory L. Koss, Dallas, for Appellants.

Vincent Chuks Ndukwe, Law Office of MNC Vincent & Associates, Dallas, for Appellee.

Before Justices O'NEILL, RICHTER, and LANG.

## OPINION

Opinion by Justice LANG.

This case involves the alleged conversion of an automobile belonging to appellee Uche Christian.[1] Uche brought this action against five defendants (the "defendants"): Khorshid, Inc., d/b/a Taxi Dallas ("Taxi Dallas"); Darya Inc., d/b/a Executive Taxi ("Executive Taxi"); Zyba, Inc., d/b/a Gold-

---

1. Appellee is referred to in the record as "Uche Christian" and "Christian Uche." In this opinion, we refer to appellee as "Uche."

en Cab ("Golden Cab"); and individuals Barry Sangani and Nasser Mansourian, co-owners of Taxi Dallas, Executive Taxi, and Golden Cab. Based on the jury's answers to the questions in the jury charge, the trial court entered judgment awarding Uche $2912 in compensatory damages, $200,000 in exemplary damages, and $10,000 in attorney's fees.

Taxi Dallas and Mansourian ("appellants") present fourteen issues on appeal, which we summarize below. Appellants argue the evidence is legally insufficient to support the jury's findings that: (1) $3000 would reasonably compensate Uche for the conversion of his automobile; (2) Taxi Dallas is entitled to an offset in the amount of $88 for delinquent stand fees, rather than the amount of $484 asserted by appellants; (3) appellants engaged in a false, misleading, or deceptive act or practice that Uche relied upon to his detriment and that was a producing cause of damages to Uche; (4) the harm to Uche resulted from malice by appellants; and (5) the conduct of Taxi Dallas warranted $200,000 in exemplary damages. Further, appellants assert factual insufficiency as to each of the above-described jury findings, and as to the jury's findings that appellants did not make a qualified refusal to return Uche's vehicle and appellants were not entitled to an offset for repair work on Uche's vehicle. Finally, appellants assert the trial court erred in awarding attorney's fees to Uche and in awarding damages against Executive Taxi.

Based on the analysis and conclusions below, we reverse and render with respect to the offset to Taxi Dallas for delinquent stand fees, suggest a remittitur as to the award of exemplary damages, and modify the trial court's judgment with respect to the parties named therein to reflect the judgment as rendered. The trial court's judgment is otherwise affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the time of trial, Uche asserted claims for conversion, illegal exercise of a mechanic's lien, trespass to chattels, conspiracy, unjust enrichment, intentional infliction of emotional distress, violation of the Deceptive Trade Practices Act, and claims for exemplary damages and attorney's fees. Defendants pleaded a general denial and asserted setoff, stating in relevant part, "Defendant Darya, Inc. alleges that it is entitled to a setoff for the amount owed to it by plaintiff for taxicab stand fees and for repair preformed [sic] on plaintiff's vehicle minus any amounts received by defendant for the sale of plaintiff's vehicle."

Uche testified at trial that during 2001, he worked as a taxicab driver for Taxi Dallas and used his own automobile for his work. According to Uche, defendants performed repair work on his automobile in May 2001. In July 2001, he initialed an invoice stating he owed defendants $300 for that repair work. This invoice stated in part, "An express mechanic's lien is hereby acknowledged on above car, truck, or vehicle to secure the amount of the repairs thereto." Later in July 2001, according to Uche, he paid defendants $300 in cash for the repair work referenced in the invoice.

Uche stated that in early December 2001, he asked defendants for a statement of any amounts he owed to them. Defendants told him he owed $582 in "stand fees." Uche made a payment of $494 to defendants and was given a receipt, dated December 3, 2001, showing a balance of $88 owed by him to defendants.

On December 31, 2001, Uche ceased working for defendants. Uche testified that on January 27, 2002, defendants took possession of his automobile, without his

consent, from the parking lot of his apartment complex. Uche contacted police, and the automobile was returned to him without any payment by him to defendants. According to Uche, on March 7, 2002, defendants again took possession of his automobile without his consent. He says he went to defendants' place of business "sometime in April 2002" and demanded the return of his automobile. However, Uche stated Mansourian told him the automobile had been sold. Then, according to Uche, Mansourian, in Uche's presence, altered the invoice initialed by Uche in July 2001 to state that Uche owed $1335 to defendants.

Uche testified that at the time his automobile was "repossessed," it was worth $6250. Further, he testified that personal items in the automobile at the time it was taken were worth $2500. Mansourian testified that in his opinion, based on his ten years of experience in the taxicab business, Uche's automobile was worth less than $1000.

Following the presentation of Uche's evidence, defendants moved for a directed verdict in favor of Sangani, Executive Taxi, and Golden Cab on the ground that there was "no testimony showing any kind of liability" with respect to those defendants. The trial court granted defendants' motion for directed verdict in favor of Sangani, Executive Taxi, and Golden Cab. Defendants also moved for and were granted a directed verdict that "no competent evidence" had been presented as to the value of personal items inside Uche's automobile at the time it was taken.

The jury found: (1) Executive Taxi performed compensable work on Uche's vehicle, but was not paid in full for that work; (2) Taxi Dallas and Mansourian converted Uche's vehicle on January 27, 2002 and on March 7, 2002; (3) neither Taxi Dallas nor Mansourian made a qualified refusal to return Uche's vehicle with respect to the January 27, 2002 conversion or the March 7, 2002 conversion; (4) no compensation was warranted to Uche for the first conversion of his vehicle on January 27, 2002; (5) $3000 would fairly and reasonably compensate Uche for the second conversion of his vehicle on March 7, 2002; (6) Taxi Dallas was entitled to an offset of $88 for delinquent stand fees; (9) neither Taxi Dallas nor Mansourian was entitled to an offset for repair work on Uche's vehicle; (10) Taxi Dallas and Mansourian engaged in false, misleading, or deceptive acts or practices that Uche relied upon to his detriment and that were a producing cause of damages to Uche; (11) clear and convincing evidence showed the harm to Uche resulted from malice by Taxi Dallas and Mansourian; (12) $200,000 in exemplary damages were assessed against Taxi Dallas; and (12) $10,000 was a reasonable fee for the necessary services of Uche's attorney in this case.

After reading the verdict aloud on the record, in the presence of the jury, the trial judge stated:

Well, the case will be placed on the 30–day disposition docket. I'll need a judgment consistent with the verdict. I need it provided to opposing counsel so he can sign off "agreed as to form only." And then I need that presented. If the case is not—if the final paperwork is not presented and signed within 30 days, the case will be subject to dismissal for want of prosecution.

Approximately two weeks after the trial, a "Motion to Disregard Jury Findings" was filed by Executive Taxi and Mansourian. The record is silent as to the disposition of that motion. The trial court's judgment was signed by a visiting judge on November 10, 2006. The judgment stated in relevant part that the jury had found Mansourian and Executive Taxi liable for

conversion of Uche's vehicle, and ordered that "Plaintiff UCHE CHRISTIAN recover from defendants NASSER MANSOURIAN and DARYA INC., d/b/a EXECUTIVE TAXI, the sum of $12,912.00, and an additional sum of $200,000.00 from DARYA INC., d/b/a EXECUTIVE TAXI." (emphasis original).

Thirty days after the date of the judgment, Executive Taxi and Mansourian filed a motion for remittitur with respect to the award of exemplary damages and a motion for new trial. The record does not reflect rulings on those motions. A notice of appeal was timely filed by Mansourian and Taxi Dallas.

## II. MODIFICATION OF TRIAL COURT'S JUDGMENT WITH RESPECT TO PARTIES NAMED

In order to assure we accurately identify the judgment defendants, we begin with appellants' fourteenth issue, in which they assert, "The judgment is in error recovering anything against defendant Darya, Inc [sic] d/b/a Executive Taxi." Appellants argue Executive Taxi was granted a directed verdict in its favor. Further, appellants assert, "None of the questions in the Court's charge referenced [Executive Taxi] and no damages were awarded appelle [sic] with respect to [Executive Taxi]." Initially, Uche asserts the judgment against Executive Taxi should be allowed to stand or, in the alternative, be reformed and modified by this Court. However, in his brief before this Court, Uche also presents a paragraph titled "Motion to Reform and Substitution of Correct Name," in which he requests this Court "to reform the judgment" by substituting Khorshid, Inc., d/b/a Taxi Dallas for Darya, Inc., d/b/a Executive Taxi "in accordance with Jury verdict [sic] and judgment of the lower court."

Judicial errors committed in the rendition of judgment must be corrected by appeal, writ of error, or bill of review. *Comet Aluminum Co. v. Dibrell,* 450 S.W.2d 56, 58 (Tex.1970). "On the other hand, when the record reflects a clerical variance between a judgment announced in open court and the judgment eventually signed by the trial judge, the appellate court can modify the judgment to correct the mistake." *McLendon v. McLendon,* 847 S.W.2d 601, 610 (Tex.App.-Dallas 1992, writ denied). Whether an error is clerical or judicial is a question of law. *Id.* In this case, the trial court clearly rendered judgment based on the jury's verdict in open court when he read the verdict aloud and stated, "I'll need a judgment consistent with the verdict." *See id.* (trial court clearly adopted rule 11 stipulations read into record as court's rendition of judgment); *Oak Creek Homes, Inc. v. Jones,* 758 S.W.2d 288, 290–91 (Tex.App.-Waco 1988, no writ) (judge's oral announcement, "I'll grant all the relief you've asked for," constituted rendering of judgment as to amounts pleaded and proved by appellee). Consequently, we conclude as a matter of law that the discrepancies in the judgment with respect to the parties named are clerical errors and, therefore, subject to modification by this Court. *See McLendon,* 847 S.W.2d at 610. The record shows the trial court granted a directed verdict in favor of Executive Taxi as to liability. In addition, the record shows the jury found Mansourian and Taxi Dallas liable to Uche. Accordingly, we modify the judgment as follows: all references in the judgment to "Executive Taxi" or "Darya Inc., d/b/a Executive Taxi" are hereby changed to "Khorshid, Inc., d/b/a Taxi Dallas." Appellants' fourteenth issue is decided in their favor.

## III. LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In their first through twelfth issues, appellants challenge the legal and factual

sufficiency of the evidence to support the jury's findings.

### A. Standard of Review

▇▇▇ When reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *See Solar Soccer Club v. Prince of Peace Lutheran Church of Carrollton, Tex.,* 234 S.W.3d 814, 820 (Tex.App.-Dallas 2007, no pet. h.). We must credit the favorable evidence if reasonable jurors could and disregard the contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 827 (Tex. 2005). A "no evidence" point will be sustained if there is no more than a scintilla of evidence to support the finding. *Gen. Motors Corp. v. Sanchez,* 997 S.W.2d 584, 588 (Tex.1999). If the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence, more than a scintilla of evidence exists. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983).

▇▇▇ When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong

and unjust. *Id.* at 407; *see also Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Solar Soccer,* 234 S.W.3d at 820. In conducting our review of both the legal and factual sufficiency of the evidence, we are mindful that the jury, as fact-finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Keller,* 168 S.W.3d at 819. Accordingly, the court of appeals may not pass upon the witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result. *Maritime Overseas,* 971 S.W.2d at 407.

### B. Qualified Refusal to Return

In their first issue, appellants contend the evidence was factually insufficient to support the jury's answer of "no" to question number seven of the jury charge, which asked whether the named defendants made a qualified refusal to return Uche's motor vehicle on or after March 7, 2002.[2] Appellants assert that, as a matter of law, they acted in good faith and upon reasonable grounds in taking possession of Uche's vehicle. Uche contends that because appellants did not have authority to take possession of his vehicle pursuant to section 70.001 of the Texas Property Code, "it is immaterial to address whether appellants [sic] refusal to return the vehicle to appelle's [sic] upon demand was justified and qualified."

▇▇▇ Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal

---

2. Question number seven of the jury charge read in full:

Did any of the Defendants named below make a qualified refusal to return Plaintiff's motor vehicle on or after March 7, 2002?

You are instructed that a qualified refusal means a refusal to return a motor vehicle on request that is not absolute, but qualified by certain conditions which are reasonable and justifiable, and which are imposed in good faith, and in recognition of the rights of the plaintiff.

Answer "Yes" or "No" for each:

Khorshid, Inc. d/b/a Taxi Dallas _____
Nasser Mansourian _____

property of another to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 447 (Tex.1971). To establish a claim for conversion of personal property, a plaintiff must prove that: (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Smith v. Maximum Racing, Inc.,* 136 S.W.3d 337, 341 (Tex.App.-Austin 2004, no pet.).

It is well-established under Texas law that acting with good faith or innocence does not constitute a defense to conversion. *Id.* at 343. However, a "qualified refusal" is the one exception to this rule. *Id.* "Where the refusal is not absolute, but is qualified by certain conditions which are reasonable and justifiable, and which are imposed in good faith, and in recognition of the rights of plaintiff, it will not serve as a sufficient basis for an action for conversion." *Id.* Whether a conversion defendant acted in good faith and upon reasonable grounds under the circumstances is a question for the jury. *Id.* at 344.

Under section 70.001(a) of the Texas Property Code, titled "Worker's Lien," a worker who by labor repairs a vehicle may retain possession of the vehicle, and in certain instances repossess the vehicle, pending payment of the amount due under a contract for the repairs. Tex. Prop.Code Ann. § 70.001 (Vernon 2007). Section 70.001 provides procedures, including specific notice requirements, for enforcement of such a lien. *Id.* § 70.001(b)-(c).

Here, appellants specifically acknowledge in their brief before this Court that they did not comply with the notice requirements of section 70.001(c), stating, "This was a technical though fatal defect." *See id.* However, appellants argue that "the jury found that there was compensable work performed and that the Uche [sic] owed the appellants for that work." Therefore, appellants argue, they acted reasonably as a matter of law in believing they had a valid worker's lien with respect to Uche's vehicle.

We disagree with appellants. Regardless of whether the record supports appellants' assertion that the jury found Uche owed appellants for "compensable work performed," such a finding is not conclusive on the issue of whether a qualified refusal was made by appellants. Mansourian testified the amount of $1335 stated in the invoice initialed by Uche accurately reflected charges for repairs to Uche's vehicle, and Uche did not pay that amount in full. In addition, the record contains testimony of Mansourian concerning his taking possession of Uche's vehicle, including testimony that he believed he had authority to take such action. Uche testified at trial that he was told by Mansourian prior to December 31, 2001 that the only money he owed to appellants was for stand fees. The jury was the sole judge of the credibility of the testimony with respect to reasonable grounds and good faith. *See Keller,* 168 S.W.3d at 819. Accordingly, on the record before us, we cannot say the evidence was factually insufficient to support the jury's finding that defendants did not make a qualified refusal to return Uche's vehicle on or after March 7, 2002. Appellants' first issue is decided against them.

### C. *Evidence of Fair Market Value*

In their second and third issues, appellants challenge the legal and factual suffi-

ciency of the evidence to support the jury's finding, in response to question number eight of the jury charge, that the value of Uche's vehicle was $3000.[3]

As their main argument, appellants contend Uche did not testify as to the fair market value of his vehicle. Appellants assert, "The only competent evidence before the jury was that the taxicab was worth less than $1,000. The jury's finding of $3,000 makes no rational sense and as such cannot be supported on appeal." Of course, Uche disagrees, contending his testimony constituted sufficient evidence to support the jury's finding.

■■■ Generally, the proper measure of damages for conversion is the fair market value of the items converted at the time and place of conversion. *United Mobile Networks, L.P. v. Deaton,* 939 S.W.2d 146, 147-48 (Tex.1997). It is well-settled in Texas that a property owner may testify about the market value of his property if his testimony shows he is familiar with the market value and his opinion is based on that market value. *Redman Homes, Inc. v. Ivy,* 920 S.W.2d 664, 669 (Tex.1996); *Porras v. Craig,* 675 S.W.2d 503, 503 (Tex. 1984): *Town East Ford Sales, Inc. v. Gray,* 730 S.W.2d 796, 802 (Tex.App.-Dallas 1987, no writ).

■■■ As a general rule, the jury has broad discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for its calculation. *Mayberry v. Tex. Dep't of Agric.,* 948 S.W.2d 312, 317 (Tex.App.-Austin 1997, writ denied). The jury's findings will not be disregarded merely because its reasoning in arriving at its figures may be unclear. *First State Bank v. Keilman,* 851 S.W.2d 914, 930 (Tex.App.-Austin 1993, writ denied). The fact that there is nothing in the record to evidence how the jury arrived at a specific amount is not necessarily fatal to the verdict. *Mayberry,* 948 S.W.2d at 317. Instead, when the evidence supports a range of awards, as opposed to two distinct options, an award of damages within that range may be an appropriate exercise of the jury's discretion. *Id.*

■■■ Here, Uche testified on direct examination:

QUESTION: How long have you been a cab driver?

UCHE: More than—about 14—14 years.

QUESTION: Okay. And how do you get rid of a—when a vehicle you are driving as a cab driver, when it is out of stand, what do you usually do with those vehicles?

UCHE: You repaint it to original color and do some repairs to put the car in good—in good order to be able to sell it at a reasonable amount.

QUESTION: Okay. Approximately how many vehicles have you sold since the time you have been a taxicab driver?

UCHE: I think two.

---

**3.** Question number eight stated:
What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff for his damages, if any, that were proximately caused by the [March 7, 2002 conversion]?
Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.
Answer separately, in dollars and cents, for damages, if any.
a. Fair market value of the vehicle.
You may consider the fair market value of the vehicle at the time and place of the conversion.
Answer: _____

. . . .

QUESTION: Since this is your vehicle, the current one—you know the one that was repossessed was not sold just like the other vehicles you have used in the past. How did you arrive at a figure of 6,250?

UCHE: That car has a new motor.

QUESTION: Uh-huh.

UCHE: A new radiator.

QUESTION: Un-huh [sic].

UCHE: I keep the car in good condition. And I believe the car was worth that amount.

On cross-examination, Uche testified as follows:

UCHE: The car I sold is when—after using a car, you don't want it. If somebody else, your neighbor or whatever, you put it for sale. Somebody looks at it and says, I don't want to—whatever the buyer and the seller agrees is what goes.

QUESTION: So you think that if you can get the right person to buy it, you can—he might pay $6,000 for it?

UCHE: I don't know what a right person is.

Although Uche did not specifically use the words "fair market value" in describing the value of his automobile, his testimony showed he was familiar with the market value and his opinion was based on that market value. *See Redman Homes,* 920 S.W.2d at 669; *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.,* 232 S.W.3d 883, 893–94 (Tex.App.-Dallas 2007, pet. filed) (although owner of stock did not use words "market value," court concluded from his testimony concerning valuation of his stock that his testimony was based on market value, and thus his testimony was some evidence of fair market value of his stock at time of breach). Therefore, we conclude Uche's

testimony constituted legally sufficient evidence of the fair market value of his automobile.

The record shows Uche testified the value of the vehicle at issue was $6250, and on cross-examination he testified the vehicle was worth "over $6000." Mansourian testified the vehicle was worth "less than $1,000." The jury's finding of $3000 does not conform to either of those amounts. However, Uche testified that at the time his vehicle was taken on March 7, 2002, it contained personal items worth $2500. The trial court granted a partial directed verdict in favor of defendants based on a lack of evidence to prove the value of those personal items. Accordingly, we conclude the record contains a rational basis for a finding by the jury that the value of Uche's vehicle at the time it was taken on March 7, 2002 was $2500 less than Uche's figure of $6250, or $3750. *See Mayberry,* 948 S.W.2d at 317 (jury has broad discretion to award damages within range of evidence presented at trial, so long as rational basis exists for its calculation). The jury's finding of $3000 was within a reasonable range of $3750. *See Bower v. Processor & Chem. Serv., Inc.,* 672 S.W.2d 30, 32 (Tex.App.-Houston [14th Dist.] 1984, no writ) (owner's testimony as to market value of his damaged van was sufficient to support judgment, even though owner admitted he had guessed value of his van and judgment of $1402.87 was less than amount of $2000 to which owner had testified). We decide appellants' second and third issues against them.

### D. Offset Against Damages

The right of offset is an affirmative defense. *SAS & Assocs., Inc. v. Home Mktg. Servicing, Inc.,* 168 S.W.3d 296, 301 (Tex.App.-Dallas 2005, pet. denied). The burden of pleading offset and of proving facts necessary to support it are

on the party making the assertion. *Id.* When a party attacks the legal sufficiency of an adverse finding on which it had the burden of proof, it must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001). In reviewing a "matter of law" challenge, we must first examines the record for evidence supporting the finding, while ignoring all evidence to the contrary. *Id.; Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). If there is no evidence to support the finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem. Co.,* 46 S.W.3d at 241; *Sterner,* 767 S.W.2d at 690. We may sustain the issue only if the contrary proposition is conclusively established. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983).

■■■■■ When a party attacks the factual sufficiency of an adverse finding on an issue on which he or she has the burden of proof, the party must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.,* 46 S.W.3d at 242; *Croucher,* 660 S.W.2d at 58. We are required to consider and weigh all of the evidence, and we can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co.,* 46 S.W.3d at 242; *see also Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). In doing so, we must "detail the evidence relevant to the issue" and "state in what regard the contrary evidence greatly out-

weighs the evidence in support of the verdict." *Pool,* 715 S.W.2d at 635.

In the case before us, question number nine of the jury charge stated as follows:

Do you find that any of the Defendants named below are entitled to an offset of any of the amounts found by you in response to Question No. 5 and/or 8.[4]

Answer "Yes" or "No" for each:

Khorshid, Inc. d/b/a/ Taxi Dallas ———

Nasser Mansourian ———

The jury answered "Yes" to question number nine with respect to Taxi Dallas, and "No" with respect to Nasser Mansourian.

Question number ten of the jury charge stated:

What amount do you find should be offset?

Consider the elements listed below and none other. Consider each element separately. Do not include any amount for one element in any other element. Do not include interest on any amount you find.

Answer separately, in dollars and cents, for elements, if any.

a. Repair work on [Uche's vehicle] ———
b. Delinquent stand fees ———

The jury's answer to question number ten was "$0" with respect to repair work on Uche's vehicle, and "$88" with respect to delinquent stand fees.

### 1. Repair Work

■■■ In their fourth issue, appellants contend the jury's finding in response to question number ten, "that the offset referred to in question number 9 should be $0 for repair work on [Uche's vehicle]" was not supported by factually sufficient evidence. Appellants assert, "The jury an-

---

4. In question number five, the jury found Uche was not entitled to any compensation for the January 27, 2002 conversion of his vehicle. In question number eight, the jury found $3000 would fairly and reasonably compensate Uche for the conversion of his vehicle on March 7, 2002.

swered that Appellants performed compensable work for Uche and that [Taxi Dallas] had not been paid." Appellants argue that the jury's answer of $0 with respect to any offset to Taxi Dallas for repair work on Uche's vehicle is inconsistent and irreconcilable with their response to question number two of the jury charge, in which, appellants assert, the jury found Uche did not pay in full for such work. To resolve this issue, we examine questions number one and two of the jury charge, which are not challenged on appeal. Question number one of the jury charge stated:

Did Executive Taxi perform compensable work on a motor vehicle owned by Plaintiff?

A person performs compensable work if valuable services are rendered or material furnished for another party who knowingly accepts and uses them and if the party accepting them should know that the performing party expects to be paid for the work.

Answer "Yes" or "No":

Answer: _____

The jury answered "Yes" to question number one. Question number two of the jury charge stated:

Prior to the first repossession on January 27, 2002, did Plaintiff pay Executive Taxi in full for the work you found was performed in your response to Question No. 1?

Answer "Yes" or "No"

Answer: _____

The jury answered "No" to question number two. The record shows questions one and two addressed only work performed by, and payment made to, Executive Taxi, which is not a party to this appeal. The jury made no findings with respect to repair work performed by Taxi Dallas or payments to Taxi Dallas for such work. Therefore, the jury's finding in question number ten, that the offset to Taxi Dallas for repair work on Uche's vehicle should be "$0," is not inconsistent or irreconcilable with the answer to question number two or any other finding by the jury. Appellants' fourth issue is decided against them.

## 2. Stand Fees

In their fifth and sixth issues, appellants contend the evidence is factually and legally insufficient to support the jury's finding in response to question number ten of the jury charge, that Taxi Dallas is entitled to an offset in the amount of $88 for delinquent stand fees. Appellants assert the amount of offset Taxi Dallas is entitled to for delinquent stand fees is $484.

■ The record shows Uche testified he was told by appellants in early December 2001 that he owed them $582 in stand fees. Uche testified he made a payment of $494 and was given a receipt, dated December 3, 2001, showing a balance of $88 unpaid. That receipt was admitted into evidence at trial. In addition, the record contains Uche's testimony that he incurred stand fees for the time period from December 3, 2001 to December 31, 2001 at the rate of $99 per week. Uche testified at trial that those stand fees were still owed by him to defendants. There is no evidence in the record that stand fees for that period were paid by Uche. Thus, uncontroverted evidence in the record shows Uche owed appellants a total of $484: the $88 balance stated in the December 3, 2001 receipt plus stand fees for twenty-eight days, or four weeks, at the rate of $99 per week.

Accordingly, we conclude the evidence in the record is legally and factually insufficient to support the jury's finding that the offset to Taxi Dallas for delinquent stand fees should be $88. Moreover, we conclude the contrary proposition asserted by

appellants, that the offset amount for delinquent stand fees should be $484, is established as a matter of law. *See Dow Chem. Co.*, 46 S.W.3d at 241; *Croucher*, 660 S.W.2d at 58. Appellants' fifth and sixth issues are decided in their favor.

### E. False, Misleading, or Deceptive Acts or Practices

In their seventh and eighth issues, appellants challenge the legal and factual sufficiency of the evidence to support the jury's answer of "yes" to question number eleven, "Did any of the Defendants engage in any false, misleading, or deceptive act or practice that Plaintiff relied upon to his detriment and that was a producing cause of damages to Plaintiff?"[5] Appellants argue that the only false act alleged by Uche was Mansourian's altering of the data on the invoice signed by Uche, which allegedly occurred in Uche's presence after his automobile had been repossessed by appellants for the second time. Appellants contend that because "the damages had already occurred" at that time, Uche did not rely on that alteration and it was not a "producing cause" of such damages.

Uche responds that he relied upon representations of appellants made prior to the taking of his automobile that he did not owe them money for repair work. Uche asserts such representations caused him damages because he lost effective use of his automobile when it was "repossessed" by appellants on the premise that a balance for repair work was still owed by him "when the contrary was the case."

 The jury was instructed, "'False, misleading, or deceptive act or practice' means any of the following: (a) Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."[6] Uche testified he was told by appellants in December 2001 that their records showed the only money he owed them was for stand fees. Mansourian testified that after Uche ceased working for Taxi Dallas, appellants took possession of Uche's vehicle in order to recover money their records showed was owed to them by Uche for repairs. We conclude such evidence supports a finding of a representation by appellants that an agreement conferred or involved rights, remedies, or obligations which it did not have or involve. Further, Uche testified he relied on appellants' representations and such reliance subsequently resulted in the loss of his vehicle. Accordingly, we

---

5. Question number eleven read in full:

 Did any of the Defendants engage in any false, misleading, or deceptive act or practice that Plaintiff relied upon to his detriment and that was a producing cause of damages to Plaintiff?

 "Producing cause" means an efficient, exciting, or contributing cause that, in a natural sequence, produced the damages, if any. There may be more than one producing cause.

 "False, misleading, or deceptive act or practice" means any of the following:

 (a) Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

 Answer "Yes" or "No" for each:

Khorshid, Inc. d/b/a Taxi Dallas _____
Nasser Mansourian _____

6. The above-quoted definition of "false, misleading, or deceptive act or practice" in the jury charge included only one type of conduct from among the twenty-seven listed in the applicable statute. *See* Tex. Bus. & Com.Code Ann. § 17.46(b)(12) (Vernon Supp.2007). Because the record does not reflect that either party objected to the jury charge and requested a different, or more expansive, definition, we review the sufficiency of the evidence in light of the definition submitted. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex.2000); *CDI Eng'g Group, Inc. v. Admin. Exch., Inc.*, 222 S.W.3d 544, 548 (Tex.App.-Houston [14th Dist.] 2007, pet. denied).

conclude the evidence is legally and factually sufficient to support the jury's answer to question number eleven. Appellants' seventh and eighth issues are decided against them.

## F. Clear and Convincing Evidence of Harm Resulting from Malice

In their ninth and tenth issues, appellants contend the evidence was legally and factually insufficient to support the jury's answer of "yes" as to both appellants in response to question number twelve, "Do you find by clear and convincing evidence that the harm to appellee resulted from malice?" [7] Appellants argue:

> The only evidence offered by [Uche] that any appellant did anything resembling malice is that Mansourian altered the work order from $300 to $1335.00. Though appellants denied categorically that this ever took place even if it did it did not result in [Uche's] harm. [Uche's] damages occurred prior to any alleged alterations by appellants.

Uche asserts there was sufficient evidence to support the jury's answer to question number twelve because appellants "acted with malice due to their repeated conduct in repossessing [Uche's] car twice" and altering documents that formed the basis of the "lien" alleged by appellants. Further, Uche argues, the repossession and subsequent sale of his automobile was intended to cause and did cause him substantial harm because his wife used that automobile to get to work.[8]

▇▇▇▇ "Clear and convincing evidence" is defined as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(2) (Vernon Supp.2007). "Clear and convincing evidence" is an intermediate burden of proof, less than "beyond reasonable doubt" but greater than the usual standard in civil cases of "preponderance of the evidence." *Foley v. Parlier*, 68 S.W.3d 870, 880 (Tex. App.-Fort Worth 2002, no pet.). As a result of this heightened burden of proof, the standard of review is correspondingly

---

7. Question number twelve read in full:

Do you find by clear and convincing evidence that the harm to Plaintiff resulted from malice?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means:

(a) a specific intent by Defendant to cause substantial injury to the Plaintiff; or

(b) an act or omission by Defendant
(i) which when viewed objectively from the standpoint of Defendant at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of potential harm to others; and
(ii) of which Defendant has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Answer "Yes" or "No" for each:
Khorshid, Inc. d.b.a Taxi Dallas _____
Nasser Mansourian _____

8. The definition of malice in question number twelve of the jury charge was based on the language of the statute in effect at the time this case was filed, which provided that malice means: (A) a specific intent by the defendant to cause substantial injury to the claimant; or (B) an act or omission: (i) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (ii) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others. *See* Act of June 11, 2003, 78th Leg., R.S., ch. 204, § 23.02(d), 2003 Tex. Gen. Laws 847, 898 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(7) (Vernon Supp.2007)).

heightened. *In re J.F.C.*, 96 S.W.3d 256, 268 (Tex.2002). Thus, in a no evidence review of a finding subject to a clear and convincing standard of proof, the party with the burden of proof must introduce enough evidence "that a fact finder could reasonably form a belief or conviction about the truth of the matter." *Sw. Bell Tel. Co. v. Garza,* 164 S.W.3d 607, 631 (Tex.2004). In a factual sufficiency review of a finding subject to a clear and convincing standard of proof, "a court of appeals must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing." *J.F.C.,* 96 S.W.3d at 266. "[T]he inquiry must be whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth" of the disputed finding. *Id.*

 Uche testified appellants told him he owed them money only for stand fees, then took possession of his automobile on two occasions without authority. Further, Uche testified the loss of his automobile caused him substantial injury because his wife was unable to use the automobile to drive to work and he had to miss work to assist her. Although, as discussed above, appellants offered testimony of Mansourian disputing Uche's evidence, the jury was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Keller,* 168 S.W.3d at

819. Based on the record before us, we conclude the evidence was legally and factually sufficient to support the jury's finding, by clear and convincing evidence, that the harm to Uche resulted from malice by appellants. We decide appellants' ninth and tenth issues against them.

### G. Exemplary Damages

In their eleventh and twelfth issues, appellants challenge the legal and factual sufficiency of the evidence to support the jury's answer of "$200,000" as to exemplary damages assessed against Taxi Dallas in question number thirteen of the jury charge.[9] Appellants argue the judgment should be reversed and remanded or remitted because the award of exemplary damages violates due process under the United States Constitution and is not supported by the evidence. Uche asserts the jury was properly instructed on what to consider in assessing exemplary damages and there was sufficient evidence to support the jury's answer.

Section 41.003 of the Texas Civil Practice and Remedies Code provides in relevant part that exemplary damages may be awarded in cases where, as here, a claimant proves by clear and convincing evidence that the harm as to which recovery of such damages is sought results from malice. TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(a)(2) (Vernon Supp.2007). Under

9. Question number thirteen of the jury charge read as follows:

What sum of money, if any, if paid now in cash, should be assessed against the Defendant named below and awarded to Plaintiff as exemplary damages, if any, for [the conversion of Uche's vehicle on January 27, 2002 and March 7, 2002]?

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are—

a. The nature of the wrong.

b. The character of the conduct involved.

c. The degree of culpability of each Defendant.

d. The situation and sensibilities of the parties concerned.

e. The extent to which such conduct offends a public sense of justice and propriety.

f. The net worth of each of the Defendants.

Answer "Yes" or "No" for each:

Khorshid, Inc. d/b/a Taxi Dallas ———
Nasser Mansourian ———

section 41.008(b) of the Texas Civil Practice and Remedies Code, exemplary damages awarded against a defendant may not exceed an amount equal to the greater of: (1) two times the amount of economic damages, plus an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or (2) $200,000. TEX. CIV. PRAC. & REM.CODE ANN. § 41.008(b) (Vernon Supp.2007).

 We must review an award of exemplary damages with careful scrutiny to ensure it is supported by the evidence, and we may vacate the award or suggest a remittitur only if the award is "so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust." *Signal Peak Enters. of Tex., Inc. v. Bettina Invs., Inc.,* 138 S.W.3d 915, 928 (Tex.App.-Dallas 2004, pet. struck) (citing *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 30 (Tex.1994)). In order to determine if the exemplary damages awarded were reasonable, we consider the factors set forth in *Alamo National Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex. 1981), which include the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties concerned, and the extent to which such conduct offends a public sense of justice and propriety. *Signal Peak,* 138 S.W.3d at 928; *see also SAS,* 168 S.W.3d at 305.

If an appellate court finds that an award of exemplary damages is excessive, the court may suggest a remittitur. TEX. R.APP. P. 46.3. If the remittitur is timely filed, the court must reform and affirm the trial court's judgment in accordance with the remittitur. *Id.* If the remittitur is not timely filed, the court must reverse the trial court's judgment. *Id.*

 The evidence showed the nature of the wrong was appellants' taking possession of Uche's automobile without authority after representing no payment was owed for repairs. Although the jury found appellants acted with malice, the harm to Uche was economic rather than physical. The character of the conduct involved was primarily limited to dishonesty and deceit. As to the degree of culpability of the wrongdoer, the record shows Taxi Dallas could have maintained more comprehensive records that would have better clarified the parties' financial obligations. With respect to the situation and sensibilities of the parties concerned, the circumstances of this case arose during a business relationship from which both sides received some benefit. *See SAS,* 168 S.W.3d at 306. Finally, we address the extent to which the conduct offends a public sense of justice and propriety. While the jury found the actions of Taxi Dallas injured Uche, the magnitude of the offensiveness of the conduct in this case was not extreme because Uche's economic loss can be recovered through monetary damages. *Id.*

 In addition, appellants challenge the award of $200,000 in exemplary damages on federal due process grounds. While state law governs the amount properly awarded as exemplary damages, that amount is also subject to an ultimate federal constitutional check for exorbitancy. *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 307 (Tex.2006). Even if an assessment of exemplary damages is not deemed excessive under governing state law, it may violate a party's substantive due process right to protection from "grossly excessive" exemplary damage awards. *SAS,* 168 S.W.3d at 306 (quoting *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 45 (Tex.1998) (citing *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996))); *see also* U.S. CONST. amend. XIV,

§ 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law").

■ The United States Supreme Court has established three "guideposts" for determining whether an exemplary damage award is unconstitutionally excessive: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between actual and exemplary damages; and (3) a comparison of the exemplary damages awarded and other civil or criminal penalties that could be imposed for similar misconduct. *Gore,* 517 U.S. at 574–75, 116 S.Ct. 1589; *Tony Gullo,* 212 S.W.3d at 308; *SAS,* 168 S.W.3d at 307.

■ The first guidepost, the degree of reprehensibility of the defendant's misconduct, was described by the Supreme Court as the most important. We should consider whether the harm caused was physical as opposed to economic; the tortious conduct evinced a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, deceit, or mere accident. *SAS,* 168 S.W.3d at 307 (citing *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 425, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)). As noted above, although the jury found appellants acted with malice, the resulting harm was economic. Further, while Uche testified appellants' actions caused him financial difficulty because his wife relied on his automobile to get to work, Uche did not quantify or specify the extent of such financial difficulty. In addition, although appellants took possession of Uche's automobile on two occasions, there was no evidence appellants have been involved in other similar incidents.

■ As to the second guidepost, we must consider the disparity between actual and exemplary damages. The jury found Uche suffered compensatory damages of $3000. However, the jury finding of $200,000 in exemplary damages is more than sixty-five times that amount. The ratio of actual to exemplary damages alone is not determinative of excessiveness. *Id.* Yet, according to the United States Supreme Court, " 'few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.' " *Id.* (quoting *Campbell,* 538 U.S. at 425, 123 S.Ct. 1513); see also *Tony Gullo,* 212 S.W.3d at 308 (noting that U.S. Supreme Court has concluded "four times the amount of compensatory damages might be close to the line of constitutional impropriety"). The amount of exemplary damages in this case clearly exceeds such guidelines.

As to the third guidepost, we compare the exemplary damages awarded to civil or criminal penalties for similar misconduct. The penalty range for criminal theft of property valued at more than $1500 is confinement between 180 days and two years and a fine not to exceed $10,000. *See* TEX. PENAL CODE ANN. § § 12.35(a)-(b); 31.03(e)(4) (Vernon Supp.2007).

All three *Gore* guideposts must be considered in light of the evidence in the record. We conclude the exemplary damage award of $200,000 in this case is excessive under the due process clause. *See SAS,* 168 S.W.3d at 308. In addition, after reviewing the record in this case respecting the *Kraus* factors, we conclude the jury's award of $200,000 in exemplary damages, while supported by some evidence, was so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Signal Peak,* 138 S.W.3d at 928. A rational jury could not have found that the nature of the wrong,

the character of the conduct, the degree of culpability, the situation and sensibilities of the parties, and the public's sense of justice and propriety required Taxi Dallas to pay exemplary damages in the amount awarded. *See SAS,* 168 S.W.3d at 307–08 (citing *Gray v. Allen,* 41 S.W.3d 330, 334 (Tex.App.-Fort Worth 2001, no pet.) (citing *Kraus,* 616 S.W.2d at 910)).

■ However, based on the *Kraus* analysis above, we conclude the evidence is factually sufficient to support a lesser award of exemplary damages. *See* Tex. R.App. P. 46.3. Pursuant to rule 46.3 and the due process clause of the U.S. Constitution, we suggest a remittitur to $12,000, four times the amount of compensatory damages found by the jury. *See Tony Gullo,* 212 S.W.3d at 308 ("four times the amount of compensatory damages might be close to the line of constitutional impropriety" in determining excessiveness of exemplary damages).

Accordingly, if Uche files in this Court, within fifteen days from the date of this opinion, a remittitur to $12,000 with respect to exemplary damages, the trial court's judgment will be thus reformed and will be affirmed. *See* Tex.R.App. P. 46.3. If the suggested remittitur is not timely filed, this cause will be reversed and remanded to the trial court for a new trial on all issues. *See id.;* Tex.R.App. P. 44.1(b) (appellate court may not order a separate trial solely on unliquidated damages if liability is contested). We decide appellants' eleventh issue against them. Appellants' twelfth issue is decided in their favor.

### IV. ATTORNEY'S FEES

In their thirteenth issue, appellants assert the judgment is in error by awarding attorney's fees to Uche. Appellants argue, "The Court was never requested by appellee to make a ruling concerning attorney's fees and it never did." Appellants contend Uche is not entitled to attorney's fees under the Texas Deceptive Trade Practices Act ("DTPA") because the jury made no finding of damages as a result of a DTPA violation. Further, appellants argue, because Uche "never specifically pleaded Section 70.008" of the Texas Property Code, he is not entitled to recover attorney's fees under that section. Uche responds that appellants do not cite any case law supporting their position.

■ Attorney's fees are recoverable only when provided for by statute or by the parties' agreement. *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.,* 835 S.W.2d 75, 77 (Tex.1992). Where a statute affords the trial court a measure of discretion in awarding attorney's fees, we review the court's decision to award such fees for an abuse of discretion. *See Bocquet v. Herring,* 972 S.W.2d 19, 20 (Tex.1998); *Aaron Rents, Inc. v. Travis Cent. Appraisal Dist.,* 212 S.W.3d 665, 669 (Tex.App.-Austin 2006, no pet.). To determine whether the trial court abused its discretion, we must determine whether the trial court acted in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *See Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 298 (Tex.1986).

■ Section 70.008 of the Texas Property Code provides, "The court in a suit concerning possession of a motor vehicle … and a debt due on it may award reasonable attorney's fees to the prevailing party." Tex. Prop.Code Ann. § 70.008 (Vernon 2007). In his petition, Uche asserted in part that he is entitled to attorney's fees pursuant to the "Texas Property Code." Appellants cite no law, and we have found none, supporting appellants' proposition that because Uche "never specifically pleaded Section 70.008," he is precluded from recovering attorney's fees un-

der that section. We conclude the trial court did not abuse its discretion in awarding attorney's fees to Uche. Appellants' thirteenth issue is decided against them.

## V. CONCLUSION

In order to reflect the judgment as rendered, we modify the trial court's judgment as follows: all references in the judgment to "Executive Taxi" or "Darya Inc., d/b/a Executive Taxi" are hereby changed to "Khorshid, Inc., d/b/a Taxi Dallas." In addition, we conclude the evidence is legally and factually insufficient to support the jury's finding that the offset to Taxi Dallas for delinquent stand fees should be $88, and the contrary proposition asserted by appellants, that the offset amount for delinquent stand fees should be $484, is established by the evidence as a matter of law. Finally, we conclude the award of $200,000 in exemplary damages is excessive and suggest a remittitur to $12,000. Appellants' fifth, sixth, twelfth, and fourteenth issues are decided in their favor. We decide appellants' first, second, third, fourth, seventh, eighth, ninth, tenth, eleventh, and thirteenth issues against them.

In accordance with rule 46.3 of the Texas Rules of Appellate Procedure, if Uche files with this Court, within fifteen days of the date of this opinion, a remittitur to $12,000 with respect to exemplary damages, the trial court's judgment will be reformed and affirmed as to exemplary damages. If the suggested remittitur is not timely filed, the trial court's judgment will be reversed with respect to exemplary damages and this cause will be remanded to the trial court for a new trial on all issues.

We reverse and render with respect to the offset to Taxi Dallas for delinquent stand fees, suggest remittitur as to the award of exemplary damages, and otherwise affirm the trial court's judgment as modified.

Opinion by Justice LANG.

## SUPPLEMENTAL OPINION

On April 14, 2008, this Court issued its original opinion in this case, in part suggesting a remittitur to $12,000 with respect to the exemplary damages awarded to appellee Uche Christian. This Court's opinion provided that if such remittitur was filed by appellee within fifteen days of the date of the opinion, the trial court's judgment would be reformed and affirmed with respect to exemplary damages.

On April 28, 2008, appellee filed with the clerk of this Court a "Motion for Remittitur, Motion to Reform and Affirm the Judgment of the Trial Court." In that motion, appellee requested that this Court "grant its motion for remittitur and reform and affirm the judgment of the lower court consistent to the court of appeal [sic] ruling dated 4/14/2008." We construe appellee's motion to constitute a timely filing of the suggested remittitur. Therefore, we issue this supplemental opinion. In accordance with our original opinion of April 14, 2008 and appellee's timely remittitur, the portion of the trial court's judgment awarding appellee $200,000 in exemplary damages is reformed to award appellee $12,000 in exemplary damages. *See* TEX. R.APP. P. 46.3. Further, the portion of the trial court's judgment relating to exemplary damages is affirmed as reformed. *See id.* This Court's original opinion remains otherwise in effect.