**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 21 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TALISMAN CAPITAL TALON FUND, LTD., | No. 09-16256 |
| Plaintiff - Appellant, | D.C. No. 3:05-cv-00354-BES-VPC |
| v. | |
| RUDOLF W. GUNNERMAN; SUPLHCO, INC., | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Brian E. Sandoval, District Judge, Presiding

Argued and Submitted June 16, 2010
San Francisco, California

Before: RIPPLE,[**]  RYMER and FISHER, Circuit Judges.

---

[*]This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]The Honorable Kenneth F. Ripple, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

Talisman Capital Talon Fund appeals the district court's decision in Gunnerman and SulphCo's favor on breach of contract and tort claims after a bench trial. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

First, Talisman on appeal does not dispute that the meaning of the Field is ambiguous and that extrinsic evidence is relevant to interpret its meaning, but argues that the district court committed legal error by relying on certain extrinsic evidence that is irrelevant or inadmissible under controlling Delaware contract principles. We disagree. The district court properly relied on extrinsic evidence of the parties' objective manifestations of intent to interpret an ambiguous contract term. *See Eagle Indus. Inc. v. DeVilbiss Health Care Inc.*, 702 A.2d 1228, 1233 (Del. 1997) ("In construing an ambiguous contractual provision, a court may consider evidence of prior agreements and communications of the parties as well as trade usage or course of dealing."); *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 835 (Del. Ch. 2007) ("[E]xtrinsic evidence may include overt statements and acts of the parties, the business context, prior dealings between the parties, and business custom and usage in the industry.") (internal alteration and quotation marks omitted).

Second, the district court's factual findings in support of its interpretation of the contract were not clearly erroneous. *See In re U.S. Fin. Sec. Litig.*, 729 F.2d

2

628, 632 (9th Cir. 1984) ("When the inquiry extends beyond the words of the contract and focuses on related facts [] the trial court's consideration of extrinsic evidence is entitled to great deference and its interpretation of the contract will not be reversed unless it is clearly erroneous."). Talisman contends that the definition of the Field in the Transfer Agreement included the disputed SulphCo technology. Among other things, Talisman heavily relies on the express exclusion of the disputed technology from Field in the Termination and Release Agreement, arguing that this exclusion would have been unnecessary had the parties understood the Field not to include the disputed technology in any event. It also relies on its expert's opinion that the disputed technology clearly comes within the parameters of the Field, and urges that Gunnerman's and Clean Fuels' conduct in treating it as outside the Field must be disregarded because Gunnerman concealed a letter acknowledging the "natural fit" between the technologies.

The district court, after considering all this evidence, rejected Talisman's reading of the Field's application to the disputed technology, finding that "the weight of the evidence indicates that Gunnerman and Capital Strategies [Talisman's predecessor in interest] did not intend or believe that the Transfer Agreement . . . conveyed the [disputed] technology to Capital Strategies." This finding is supported by the record. Capital Strategies was fully aware in 2003 of

3

Clean Fuel's acquiescence in Gunnerman's position that the disputed technology was not covered by the Field. It also had independent access to information describing the disputed technology, including published patents assigned to SulphCo that Talisman now claims to own, notwithstanding any representations or nondisclosure about that technology by Gunnerman. These patents were not included in the Transfer Agreement's nonexclusive list of patents and applications subject to the transfer. Moreover, whether or not Clean Fuels' acquiescence in Gunnerman's claim that the SulphCo technology was outside the Field was misinformed, Capital Strategies had every reason to understand Gunnerman's interpretation of the Field during the 2003 negotiations. If, contrary to that interpretation, the disputed technology is clearly within the Field (as Talisman's expert now opines), Capital Strategies could have challenged Gunnerman's interpretation and resolved the dispute by explicit terms in the Transfer Agreement. Its failure to do so further supports the district court's finding that Capital Strategies did not intend or believe that the Transfer Agreement affected the disputed technology. Although Talisman's current interpretation of the scope of the Field is not wholly implausible, the district court's findings supporting a contrary interpretation are not clearly erroneous.

Third, these same reasons defeat Talisman's argument that the district court abused its discretion because its contract interpretation is inconsistent with the testimony of Talisman's expert witness based on the language of the Transfer Agreement. The district court resolved the ambiguity as to the scope of the Field by looking to what Gunnerman and Capital Strategies intended the Transfer Agreement to mean, as evidenced by their objective manifestations of intent and the context in which it was negotiated. The court's resolution was "support[ed] [by] inferences that may be drawn from the record," notwithstanding Talisman's expert's contrary testimony. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (explaining the abuse of discretion standard of review).

Finally, having affirmed the district court's interpretation of the Transfer Agreement, we also affirm its rejection of Talisman's conversion claim. Talisman does not own the relevant property under the Transfer Agreement and cannot prevail on a claim that another has converted it. *See Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000); *Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 758-59 (Tex. App. 2008).

**AFFIRMED.**

5