Frank P. HERNANDEZ, Appellant,

v.

SOVEREIGN CHEROKEE NATION TEJAS, Appellee.

No. 05–09–00535–CV.

Court of Appeals of Texas, Dallas.

March 31, 2011.

Supplemental Opinion April 27, 2011.

Charles W. McGarry, Law Office of Charles McGarry, Dallas, for Appellant.

William Lewis Sessions, The Sessions Law Firm, Dallas, for Appellee.

Before Justices O'NEILL, MARTIN RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice MARTIN RICHTER.

Appellee Sovereign Cherokee Nation Tejas (SCNT) sued appellant Frank P. Hernandez alleging fraud, breach of fiduciary duty, and other claims. The trial court struck Hernandez's pleadings as a discovery sanction, and the case was submitted to a jury to determine damages. The jury answered questions awarding actual and exemplary damages to SCNT, and the trial court entered judgment for SCNT. Hernandez appeals, alleging the sanctions were an abuse of the trial court's discretion. Hernandez also alleges there was no evidence or insufficient evidence to support the jury's findings. For the reasons set forth below, we suggest a remittitur of actual and exemplary damages. In all other respects we affirm the trial court's judgment.

### BACKGROUND

According to its Third Amended Petition, SCNT is "a domestic dependent Indian Nation located within the State of Texas."[1] Hernandez is an attorney licensed

---

1. The actual status of SCNT was hotly disputed by Hernandez at trial. At the time he sought investments in the casino project, he described SCNT's status in the prospectus he drafted as follows:

> The SCNT is not a federally recognized Nation, in accordance with the Department of the Interior and the Bureau of Indian Affairs. [BIA] The SCNT is acknowledged by the United States as a "domestic dependent nation" for all purposes. The federal courts and the State of Texas courts recognize the SCNT as a Nation. The U.S. Department of Justice acknowledges that the SCNT is a "domestic dependent Nation" under *Cherokee v. Georgia*, and that the SCNT is equivalent to a state.
> The SCNT has the ability to and does operate as a self-sufficient nation, for all purposes.

Before trial Hernandez sought a writ of mandamus in this Court, complaining that the trial judge did not give full faith and credit to a final judgment of the SCNT court. *See In re Chong Son Na & Frank P. Hernandez*, No. 05–05–01020–CV, 2005 WL 1777119 (Tex.App.-Dallas, July 28, 2005, orig. proceeding) (mem. op.). This Court denied the writ. *Id.* At trial, however, Hernandez attempted to testify to his opinion that SCNT was not recognized as an Indian nation. SCNT then stipulated it was not a federally- or state-recognized Indian nation or Indian tribe. The trial judge accepted the stipulation, and at first noted that "they are going to be an unincorporated association of individuals," but then deferred any further ruling on SCNT's status or capacity until the close of evidence, if necessary. (In response to Hernandez's inquiry, "Let me get this clear. Are they, in the Court's ruling, an unincorporated association?", the trial judge responded, "I'm going to defer until the conclusion of all the evidence to rule on that if I need to rule on that, and I'll determine at the close of evidence if I need to rule on that one."). Other than overruling Hernandez's objection to the definition of SCNT given in the charge ("The terms 'SCNT', 'Sovereign Cherokee Nation Tejas' or 'Plaintiff' shall mean and refer to the Sovereign Cherokee Nation Tejas."), the trial judge made no further ruling on SCNT's status or capacity. On appeal, Hernandez argues SCNT is an unincorporated association whose members cannot be bound by contracts between the association and any third party. To the extent this argument is relevant to his appeal of the

in Texas who served as "attorney general" for SCNT from approximately 1993 to 2005. During that time, he maintained records for SCNT and worked on developing a casino for SCNT known as the Raven Casino Project. SCNT paid legal fees to Hernandez for his services. SCNT's petition alleges Hernandez acted without SCNT's authority in issuing a prospectus, raising money from investors, and purchasing land for the Raven Casino Project. SCNT's operative petition, over 100 pages in length, alleges an elaborate scheme involving Hernandez's use of an account created under the Interest on Lawyers Trust Account (IOLTA) program to convert funds raised for SCNT to his own use.

In 2005, SCNT filed this action against Hernandez and others. SCNT's operative petition alleges causes of action against Hernandez for negligent misrepresentation, fraudulent inducement, fraud, statutory fraud, breach of fiduciary duty, conversion and misappropriation, and libel and slander. The petition also alleges a conspiracy. SCNT sought an accounting, declarative and injunctive relief, and damages, and requested that a constructive trust be imposed. SCNT obtained a temporary injunction on June 17, 2005, prohibiting Hernandez from acting as an agent for SCNT, issuing bonds in its name, using any bank account in its name, or obligating SCNT under any contract, including the Raven Casino Project. On April 16, 2007, the trial court entered a second temporary injunction prohibiting Hernandez from engaging in more than twenty acts relating to SCNT's finances and operation.

In the course of the proceedings in the trial court, claims were asserted among and settled with investors in the Raven Casino Project and another SCNT group organized by Hernandez. Neither the investors nor the competing SCNT group are now making claims to the funds at issue.

Throughout the proceedings in the trial court, SCNT sought in discovery to obtain SCNT records kept by Hernandez while he served as attorney general. As detailed more fully below, the trial court held hearings on numerous pretrial motions, including a hearing on October 4, 2007, after which the trial court struck Hernandez's pleadings. The case proceeded to a jury trial on damages. The jury made findings in favor of SCNT, and the trial court entered judgment for SCNT.

## STANDARDS OF REVIEW

We review a trial court's imposition of sanctions for an abuse of discretion. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex.2006) (per curiam). A trial court abuses its discretion if it acts without reference to any guiding rules and principles such that the act was arbitrary or unreasonable. *Id.* We must conduct an independent review of the entire record in our review of the trial court's action. *Id.*

In reviewing a verdict for legal sufficiency, we credit evidence that supports the verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). Anything more than a "scintilla of evidence" is legally sufficient to support the jury's finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996). To be more than a scintilla, the evidence must rise "to a level that would enable reasonable and fair-minded people to differ in their conclusions." *See Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994).

In reviewing a factual sufficiency challenge, we consider and weigh all the evi-

jury's determination of damages, we address it below.

dence in support of and contrary to the finding and will set aside the verdict only if the evidence supporting the jury finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Ramsey v. Davis,* 261 S.W.3d 811, 815 (Tex.App.-Dallas 2008, pet. denied). In making this review this Court is not a fact finder, and we will not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence. *Tex. Farmers Ins. Co. v. Cameron,* 24 S.W.3d 386, 392 (Tex.App.-Dallas 2000, pet. denied).

We review an exemplary damage award under a factual sufficiency standard of review. *Ellis Cnty. State Bank v. Keever,* 936 S.W.2d 683, 685 (Tex.App.-Dallas 1996, no writ) (citing *Moriel,* 879 S.W.2d at 30). We are not free to reweigh the evidence and set aside a jury verdict merely because we feel that a different result is more reasonable. *Ellis Cnty. State Bank,* 936 S.W.2d at 685. Because the award of exemplary damages rests in the jury's discretion, we will not set aside the damages unless after reviewing the entire record, we determine the award is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Id.* (citing *Moriel,* 879 S.W.2d at 30). When determining whether the exemplary damage award is excessive, we consider the following factors: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties; and (5) the extent to which such conduct offends a public sense of justice and propriety. *Id.* at 686 (citing *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981)); *see also* Tex. Civ. Prac. &

Rem.Code Ann. § 41.011 (West 2008) (listing factors). We must detail all of the relevant evidence and explain why that evidence either supports or does not support the exemplary damage award in light of the *Kraus* factors. *Id.; see also* Tex. Civ. Prac. & Rem.Code Ann. § 41.013 (West 2008) (judicial review of award).

## Sanctions

In one issue with fourteen subparts, Hernandez asserts the trial court abused its discretion by striking his pleadings as a discovery sanction. A discovery sanction must be just, that is, it must bear a direct relationship between the improper conduct and the sanction imposed, and it "should be no more severe than necessary to satisfy its legitimate purposes." *Trans-American Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991). Discovery sanctions serve to secure compliance with the discovery rules, deter other litigants from abusing the discovery rules, and punish those who violate the rules. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.,* 300 S.W.3d 348, 384 (Tex.App.-Dallas 2009, pet. denied).

Hernandez argues the trial court's October 4, 2007 order striking his pleadings was error because SCNT's motion for sanctions failed to give reasonable notice of the sanctionable conduct alleged; the failure to replead a counterclaim on special exceptions does not justify the death penalty; the contempt and enforcement orders Hernandez allegedly violated were void; the sanctions order does not recite any findings and is not based on evidence; and no lesser sanctions were ever considered by the trial court. After an independent review of the entire record, *see American Flood Research, Inc.,* 192 S.W.3d at 583, we conclude Hernandez's complaints are not well-founded.

In reviewing the trial court's order and considering Hernandez's arguments, we first examine the relationship between the improper conduct and the sanction imposed. *See TransAmerican Natural Gas Corp.*, 811 S.W.2d at 917. The October 4, 2007 order was not the only order entered in the course of the pretrial proceedings. The reporter's record includes transcripts from at least five separate pretrial hearings, some on multiple motions. Beginning in 2005, the trial judge heard and considered a variety of motions from both Hernandez and SCNT regarding discovery and other pretrial matters. In an October 2005 hearing, the trial court imposed a "very strict schedule" for discovery and ordered all parties to make requested documents available for inspection and copying as well as scheduling depositions within a set time period. The trial court at that time refused to impose sanctions or find Hernandez in contempt as requested by SCNT.

On April 13 and 16, 2007, the trial court heard SCNT's request for temporary injunction. At this hearing, the trial court heard SCNT's request to enjoin Hernandez from engaging in a longer and more detailed list of activities in the name of SCNT than were prohibited under the trial court's June 17, 2005 injunction. In a two-day hearing, both SCNT and Hernandez called witnesses and introduced exhibits regarding Hernandez's continued activities in the name of SCNT after the June 17, 2005 injunction had been entered. Hernandez himself testified that after SCNT had terminated him from his position as attorney general, he used SCNT's records to contact approximately 120 SCNT "citizens" for the purpose of holding an election "to facilitate the Cherokees in Texas to be able to rejuvenate the Nation," and to put forward a plan to go forward with the Raven Casino Project. Hernandez and other witnesses testified that after the

June 17, 2005 injunction, an election was held, and Hernandez was elected as SCNT attorney general. Acting as attorney general of the reconstituted group, Hernandez paid himself "for legal services and for managing the operation and construction of the casino" from funds raised for SCNT. He testified he would not agree to cease acting as attorney general of SCNT without an order from the court, and he further testified he thought the trial court did not have authority to enter such an order. After hearing testimony and argument, the trial court granted most of the relief requested.

In June 2007, the trial court heard several motions. The first was SCNT's motion to compel Hernandez's deposition. At a previous hearing on a motion to compel Hernandez's deposition and other matters, the trial court had instructed the parties to confer on a new discovery schedule in light of new allegations made in an amended pleading. Hernandez, however, had refused to appear for his deposition after it had been noticed, arguing the discovery period was closed. At the hearing on SCNT's motion to compel, the trial court noted:

> Let me just say that this Court believes that all the attorneys should subscribe to the principles contained in the lawyer's creed, and that includes cooperation with each other to schedule depositions. I find it totally unnecessary to be conducting this hearing this morning to schedule your [Hernandez's] deposition.... This is a very simple matter that should have been agreed upon.... The deposition will be conducted today at 11:00 o'clock here in the Kaufman County Courthouse. I'm not going to award sanctions at this time on that matter. I do expect the deposition to be taken today.

The trial court denied SCNT's motion for sanctions against Hernandez regarding the deposition.

Next, the trial court heard argument and testimony about Hernandez's failure to comply with a prior order of the court to produce documents and other tangible items in his possession, including certain computers, from his tenure as attorney general of SCNT. Hernandez cross-examined SCNT's witnesses and offered his own testimony regarding the requests for production. At the conclusion of testimony and argument, the trial court ordered that the computers be delivered by Hernandez that day, that Hernandez sign an authorization to permit SCNT to obtain bank records, and that he pay $1,000 in sanctions for failure to timely deliver the computers to SCNT.

Next, at the June 2007 hearing, the trial court heard testimony and argument regarding whether Hernandez had violated the temporary injunction entered by the court on June 17, 2005. As noted above, that injunction had prohibited Hernandez from using the title of attorney general of SCNT or acting as an agent or representative of SCNT, using any bank account in SCNT's name, or obligating SCNT under any contract. SCNT adduced evidence that Hernandez was present at the 2005 hearing on the injunction and was aware of and understood its terms at the time it was entered. As at the April 2007 hearing, SCNT adduced evidence, through Hernandez's own testimony, that after the 2005 injunction order was entered, Hernandez organized a "reconstituted" SCNT group and continued his activities relating to the Raven Casino Project. SCNT offered evidence that Hernandez had continued to use the same bank account, acknowledging the court's order only by crossing out SCNT's name on some of the checks. Hernandez testified he held himself out as

the attorney general of SCNT after the injunction because he was properly elected by the reconstituted SCNT. He argued the election "in effect, set aside the Court's order because now I was authorized to act." The trial court found Hernandez in contempt. As part of his challenge to the striking of his pleadings, Hernandez argues the contempt order does not support death penalty sanctions because it was void. Hernandez cites numerous reasons the contempt order is void, including denial of due process, denial of the right to counsel, denial of the right to trial by jury, and other issues. Even assuming the contempt order was not properly entered, however, the record does reflect Hernandez's own testimony and argument that he was aware of and understood the court's injunction but intentionally took actions prohibited under it.

On October 4, 2007, the trial court held a hearing on SCNT's motions to enforce the court's prior orders and for contempt. SCNT requested sanctions under rules 13 and 215, Texas Rules of Civil Procedure, including the striking of Hernandez's pleadings, for Hernandez's failure to comply with the trial court's orders. The trial court granted the motion by order dated October 4, 2007. On the same day, the trial court also signed an Order for Enforcement of Contempt Orders and an Order of Commitment. In the Order for Enforcement, the trial court made specific findings to support its order, including Hernandez's willful failure to obey the court's order of June 19, 2007, to deliver two SCNT computer monitors; to deliver a written authorization to SCNT's counsel to obtain relevant bank records; to pay amounts ordered as sanctions; and to serve written responses to interrogatories. The trial court also made detailed findings about Hernandez's failure to comply with its June 19, 2007 order to pay fines and

disgorge funds "taken from bank accounts labeled with the name of SCNT."

■ Hernandez makes several complaints about the October 4, 2007 order striking his pleadings. He argues the order "was based solely on the arguments of counsel and contained no findings." He argues the order does not give reasonable notice of the conduct for which he was to be sanctioned. He complains that after trial, when he filed a response to SCNT's motion for judgment alleging the trial court abused its discretion in striking his pleadings, the trial court entered a "Supplemental Order Granting Plaintiff's Motion for Sanctions" containing detailed findings supporting the striking of Hernandez's pleadings. Citing *Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex.1993), Hernandez argues the supplemental order should be disregarded "because the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any sanctions based on that conduct." Hernandez also argues that lesser sanctions were never considered by the trial court.

We reject Hernandez's arguments. The record, including transcripts of evidentiary hearings and numerous orders, is abundantly clear that the trial court heard evidence regarding the same discovery abuse and violations of court orders multiple times, and attempted to obtain Hernandez's compliance multiple times through imposition of attorneys' fees and contempt of court, both specifically listed in rule 215.2(b) as available sanctions. *See* TEX.R. CIV. P. 215.2(b). An order issued on the same date as the order striking Hernandez's pleadings detailed Hernandez's violations of court orders and his sanctionable conduct, and the court's supplemental order contains similar findings. We conclude *Remington Arms Co.* is distinguish-

able because in that case, there was no hearing or order on pretrial discovery abuse until after trial. *See id.* Here, the trial court had conducted multiple hearings and entered several orders prior to trial based on Hernandez's conduct.

■ We conclude there was a direct relationship between the offensive conduct and the sanction imposed. *See Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). Discovery sanctions can be used to adjudicate the merits of a party's claims only when the party's hindrance of the discovery process justifies a presumption that its claims lack merit. *Id.* at 841. The record supports a conclusion that Hernandez intentionally violated the court's orders on multiple occasions. SCNT's allegations of fraud, breach of fiduciary duty, and other claims are directly related to Hernandez's alleged misuse of SCNT funds and unauthorized actions using SCNT's name. The discovery and court orders at issue bore directly on these claims. The trial court concluded the sanctions bore a direct relationship to Hernandez's "repeated acts and omissions in contempt of this Court's duty to enforce its orders and effectuate administration of justice between the parties to this cause," as the court noted in its supplemental order. The record supports this conclusion, and the trial court acted with reference to guiding rules and principles in reaching it. *See Am. Flood Research, Inc.*, 192 S.W.3d at 583.

■ Next we examine whether the sanction striking Hernandez's pleadings was excessive. A sanction is excessive if lesser sanctions would have served the purposes of compliance, deterrence, and punishment. *Tex. Integrated*, 300 S.W.3d at 384. The record reveals Hernandez had the opportunity to appear, argue, and testify at numerous hearings during the years prior to the trial court's order striking his

pleadings. The trial court signed multiple orders, including orders to produce documents and tangible items and appear for deposition, orders to pay attorneys' fees as sanctions for failure to comply with discovery, and orders to refrain from a variety of actions in the name of SCNT. While the October 2007 order itself does not detail each particular offense or recite particular evidence, the trial court issued both an enforcement order on the same date and a supplemental order after trial detailing Hernandez's violations of court orders and failure to comply with discovery. The record supports the conclusion that Hernandez's improper conduct prevented SCNT from obtaining evidence essential to the presentation of its case and to the refutation of Hernandez's defenses. *See Cire,* 134 S.W.3d at 841. The record further supports the conclusion that the lesser measures imposed by the trial court had neither deterred Hernandez from continued violations nor achieved his compliance with prior orders of the court. *See Tex. Integrated,* 300 S.W.3d at 384.

Based on our independent review of the entire record, we conclude the sanction imposed by the trial court has a direct relationship to Hernandez's improper conduct and was not excessive. *See Stromberger v. Turley Law Firm,* 315 S.W.3d 921, 925 (Tex.App.-Dallas 2010, no pet.) (review of entire record revealed no abuse of discretion by trial court's imposing $5,300 in attorney's fees as sanction). Thus, we conclude the trial court did not abuse its discretion in entering the sanctions order. *See Am. Flood Research, Inc.,* 192 S.W.3d at 583. We overrule Hernandez's first issue.

## JURY'S AWARDS OF DAMAGES

In his second through seventh issues, Hernandez argues the evidence is legally and factually insufficient to support the jury's awards of damages. In his eighth and ninth issues, he complains the jury's answers to certain questions are in fatal conflict. In his tenth issue, he argues SCNT cannot elect an alternative measure of damages under the jury's verdict.

■■■■■ We first reject Hernandez's eighth and ninth issues complaining of conflicts in the jury's answers. To preserve these issues for appeal, Hernandez was required to object before the jury was discharged. *See Medistar Corp. v. Schmidt,* 267 S.W.3d 150, 162 (Tex.App.-San Antonio 2008, pet. denied). Because he did not do so, and further, because we cannot assume the jury's answers conflict if they can be reconciled, we overrule these issues. *See SAS & Assocs., Inc. v. Home Mktg. Servicing, Inc.,* 168 S.W.3d 296, 303 (Tex.App.-Dallas 2005, pet. denied). The challenged answers (regarding actual damages for fraud, statutory fraud, conversion, and breach of fiduciary duty) all awarded damages within the range of evidence presented at trial, except as noted below, and we are not permitted to disregard the jury's damages award on the basis that the jury's reasoning is unclear. *Id.*[2]

2. As a general rule, the jury has broad discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for its calculation. *Mayberry v. Tex. Dep't of Agric.,* 948 S.W.2d 312, 317 (Tex.App.-Austin 1997, writ denied). The jury's findings will not be disregarded merely because its reasoning in arriving at its figures may be unclear. *First State Bank v. Keilman,* 851 S.W.2d 914, 930 (Tex.App.-Austin 1993, writ denied). The fact that there is nothing in the record to evidence how the jury arrived at a specific amount is not necessarily fatal to the verdict. *Mayberry,* 948 S.W.2d at 317. Instead, when the evidence supports a range of awards, as opposed to two distinct options, an award of damages within that range may be an appropriate exercise of the jury's discretion. *Id.; see also Khorshid, Inc. v. Chris-*

■ Next, we address Hernandez's complaints about the sufficiency of the evidence to support the jury's specific damage awards. Because SCNT elected the damages awarded by the jury on its fraud claim, we begin our review with that award. In Question 7 of the jury charge, the jury was asked to determine damages for fraud under two measures, "out-of-pocket" and "benefit of the bargain." The jury determined the out-of-pocket damages to be $1,348,920.75, and the benefit of the bargain damages to be $5 million. SCNT elected the $5 million award, which is included in the trial court's judgment. We conclude that the evidence is legally sufficient to support an award of damages, but we agree with Hernandez that the evidence is factually insufficient to support the amount of the award.

■ The benefit of the bargain measure of direct damages for fraud "computes the difference between the value as represented and the value received." *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 775 (Tex.2009). The parties agree the jury included expected profits from the casino in the $5 million award. Under the benefit of the bargain measure, lost profits on the bargain maybe recovered if they are proved with reasonable certainty. *Id.* at 776 (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 50 (Tex.1998)); *see also Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex.1994) (party may recover lost profits only if it shows amount of loss by competent evidence with reasonable certainty). It is not necessary that

profits should be susceptible to exact calculation; it is sufficient that there be data from which they may be ascertained with a reasonable degree of certainty and exactness. *Tex. Instruments, Inc.*, 877 S.W.2d at 279. At a minimum, however, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992). Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates. *Id.*

The evidence offered at trial showed that in 2004 and 2005, Hernandez sold subscriptions and entered into investor agreements for the Raven Casino Project. He deposited $709,343.90 in investor checks made payable to SCNT into an IOLTA trust account he controlled. Also in 2004, Hernandez opened a checking account entitled "Frank P. Hernandez, Attorney at Law Kaufman Project—SCNT," and deposited $639,576.85 in funds received from investors. Investor funds and interest on these two accounts totaled $1,348,920.75. The evidence also showed that $661,572.84 was "spent on real estate," to purchase the property where the casino was to be located.[3] SCNT also introduced an exhibit entitled "Summary—Plaintiff's Damages" showing the difference between the "money received by Frank Hernandez in name of Sovereign Cherokee Nation Tejas" and "money spent on real estate," in the amount of $687,347.91. Of the remaining investor

*tian*, 257 S.W.3d 748, 760 (Tex.App.-Dallas 2008, no pet.).

3. The record reflects that SCNT disavowed ownership in the real property in question, moved to cancel the notice of lis pendens on file, and "agreed to cooperate with Defendants in the legal transfer of said property to those persons determined to own such property." The trial court granted an agreed order on plaintiff's motion to cancel the notice of lis pendens, and ownership of the real property is not at issue.

funds, $195,000.00 was paid to Hernandez, his son, and an employee, including $134,000.00 in checks made payable to Hernandez himself. The evidence also showed a total of $21,666.69 was paid to Chief Grey Wolf and Chief Bear Who Walks Softly, principals of SCNT.

SCNT argues that the testimony of Chief Bear Who Walks Softly and Hernandez as to the expected profits from the casino are sufficient to support the jury's findings on the benefit of the bargain damages awarded in Question 7 for fraud. According to Chief Bear, Hernandez represented that SCNT would receive $25,000 per day from the operations of the casino. More detailed projections are included in the prospectus prepared by Hernandez to seek investors in the casino project. Under "gross income projections," Hernandez calculates income based on the square footage of the casino, the hours of operation, and the number of customers expected. His most conservative estimate is based on "75 persons gaming per hour 8 hours per day" at $25 per person, results in a daily gross of $15,000, a monthly gross of $450,000, and a yearly gross of $5,400,000. These figures did not include projected alcohol and food sales and parking fees, which were estimated separately. Hernandez's projections, however, do not appear to be based on actual data from any specific operations.

■■■■■ The Raven Casino Project never became operational. An enterprise is not prohibited from recovering lost profits merely because it is new. *Tex. Instruments, Inc.*, 877 S.W.2d at 280. But "the mere hope for success of an untried enterprise, even when that hope is realistic, is not enough for recovery of lost profits." *Id.* In the *Texas Instruments* case, the court stated the focus should be on the experience of the persons involved in the enterprise, the nature of the business activity, and the relevant market. *Id.* Applying these standards, we conclude SCNT's evidence of lost profits is not sufficient to support the jury's award of $5 million in benefit of the bargain damages for fraud. *Cf. Bright v. Addison*, 171 S.W.3d 588, 602–03 (Tex.App.-Dallas 2005, pet. denied) (expert witness testimony was sufficient to support lost profits where expert used actual data from operating casinos in calculations).

■■■■■ We next consider the evidence to support the jury's answer of $1,348,920.75 to the first part of Question 7, inquiring about out-of-pocket damages for fraud.[4] The record shows the amount awarded by the jury in response to this question was the amount collected by Hernandez in SCNT's name. The record also showed, however, that in presenting its damages to the jury, SCNT subtracted from this amount the $661,572.84 in "payments for real estate" connected with the purchase of the real property for the casino project, claiming a total of $687,347.91 in damages. This latter amount was

---

4. When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to judgment on the theory entitling him to the greatest or most favorable relief. *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex.1988) (citing *Hargrove v. Trinity Universal Ins. Co.*, 152 Tex. 243, 256 S.W.2d 73 (1953)). If the judgment is reversed on appeal, the prevailing party may seek recovery under an alternative theory. *Id.* We therefore consider the sufficiency of the evidence to support the jury's awards of damages under an alternative theory presented in the charge. *See also Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640, 650–51 (Tex. App.-Houston [14th Dist.] 2003, pet. denied) (court of appeals could consider sufficiency of evidence to support alternative theory of negligent misrepresentation after reversal of judgment for fraud).

awarded by the jury in response to Question 1, "loss of value" damages for conversion.

Hernandez challenges the conversion damages specifically and all amounts of out-of-pocket damages generally by arguing that SCNT's pleadings defeated its right to recover. Hernandez argues that because SCNT is an unincorporated association, and because it pleaded Hernandez had no authority to enter into investor agreements, SCNT would not be bound by the investor agreements or liable to the investors under them. Hernandez cites the "general rule" that "unincorporated associations are not liable on their contracts, which are regarded as the liability of the individuals who sign them." *See, e.g., Pitman v. Lightfoot*, 937 S.W.2d 496, 527 (Tex.App.-San Antonio 1996, writ denied). Hernandez argues that the investor agreements were "his personal agreements" as a matter of law; he was personally liable under the agreements and therefore "the money in the accounts was his." Hernandez concludes SCNT suffered no damages because the money never belonged to it, and this question of law could not be established by the default judgment.

 We reject Hernandez's arguments. Assuming SCNT is an unincorporated association, it is nevertheless entitled to bring suit for the purpose of enforcing a substantive right. Tex.R. Civ. P. 28 ("Any . . . unincorporated association . . . may sue or be sued in its partnership, assumed or common name for the purpose of enforcing for or against it a substantive right. . . ."). While Hernandez correctly notes that rule 28 does not enlarge the substantive rights of a party, neither does it diminish those rights. *See* Tex.R. Civ. P. 815 (substantive rights of parties unaffected by construction of rules). Whether or not SCNT would have been liable to third parties for breach of the investor agree-

ments, Hernandez is not relieved of liability to SCNT for his own fraud or other breaches of duty. For example, Hernandez owed duties to SCNT, his client, even though it was an unincorporated association, and breach of those duties could result in damages to SCNT. *See, e.g.,* Tex. Disciplinary Rules Prof'l Conduct R. 1.12 cmt. 2, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2005) (Tex. State Bar R. art. X, § 9) (lawyer employed or retained by organization represents the entity; rule applies to lawyers representing unincorporated associations). Hernandez's duty to his client included a duty of full disclosure, an "affirmative duty to make a full and accurate confession of all his fiduciary activities, transactions, profits, and mistakes." *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 22 (Tex. App.-Tyler 2000, pet. denied) (citing *Montgomery v. Kennedy*, 669 S.W.2d 309, 312–14 (Tex.1984)). In soliciting investor funds for the casino project, Hernandez included a statement in the agreements with the investors that funds would be deposited into his IOLTA account, and he would "hold the funds in trust for SCNT for the use and benefit of the SCNT." The breach of the duty of full disclosure by a fiduciary is tantamount to fraudulent concealment. *Chappell*, 37 S.W.3d at 22 (citing *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex.1988)). Further, "[a]n action will lie for conversion of money when its identification is possible and there is an obligation to deliver the specific money in question or otherwise particularly treat specific money." *Houston Nat'l Bank v. Biber*, 613 S.W.2d 771, 774 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.). The trial court properly submitted damages questions for the jury's determination.

 Because we conclude the evidence supports the amount of $687,347.91,

minus the $21,666.69 already paid to SCNT's principals, or $665,681.22, and we further conclude the evidence is factually insufficient to support an actual damages award in excess of $665,681.22, we sustain Hernandez's second and third issues to the extent they assert there is insufficient evidence to support an actual damage award in excess of $665,681.22. Therefore, we suggest a remittitur. This Court may suggest remittitur on its own motion when the appellant complains there is insufficient evidence to support an award and the court of appeals agrees, but concludes there is sufficient evidence to support a lesser award. *Comstock Silversmiths, Inc. v. Carey*, 894 S.W.2d 56, 58 (Tex.App.-San Antonio 1995, no writ) (citing *David McDavid Pontiac, Inc. v. Nix*, 681 S.W.2d 831, 838 (Tex.App.-Dallas 1984, writ ref'd n.r.e.)); *see also* TEX.R.APP. P. 46.3 (court of appeals may suggest remittitur). As explained by the supreme court in *Larson v. Cactus Utility Co.*, 730 S.W.2d 640, 641 (Tex.1987),

> If a court of appeals holds that there is no evidence to support a damages verdict, it should render a take nothing judgment as to that amount. If part of a damage verdict lacks sufficient evidentiary support, the proper course is to suggest a remittitur of that part of the verdict. The party prevailing in the trial court should be given the option of accepting the remittitur or having the case remanded.

Under these standards, SCNT should be given the option of accepting the remittitur or having the case remanded to the trial court. *See* TEX.R.APP. P. 46.3; *Larson*, 730 S.W.2d at 641.

In his sixth issue, Hernandez contends there is no evidence or insufficient evidence to support the jury's award of $2,500,000 as exemplary damages for fraud. Hernandez argues that because the evidence is insufficient to support the jury's award of actual damages, the award of exemplary damages "must likewise be set aside." Similarly, in his seventh and tenth issues, he challenges the jury's three other awards of exemplary damages.[5] Hernandez does not challenge the jury's affirmative answers to Questions 2, 5, 8, and 11, the predicate questions for awards of exemplary damages.

We must review an award of exemplary damages with careful scrutiny to ensure it is supported by the evidence, and we may vacate the award or suggest a remittitur only if the award is "so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust." *Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 767 (Tex.App.-Dallas 2008, no pet.). As noted above, in order to determine if the exemplary damages awarded were reasonable, we consider the factors set forth in *Alamo National Bank v. Kraus*, which include the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties concerned, and the extent to which such conduct offends a public sense of justice and propriety. *See Ellis Cnty. State Bank*, 936 S.W.2d at 686 (citing *Kraus*, 616 S.W.2d at 910); *see also Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 926 (Tex.1998) (court of appeals must explain why evidence does or does not support

---

**5.** In its response to Question 3, the jury awarded $661,572.84 in exemplary damages for conversion. In its response to Question 6, the jury awarded $5 million in exemplary damages for breach of fiduciary duty. In its response to Question 12, the jury awarded $2.5 million in exemplary damages for statutory fraud. Each of these answers followed a question in which the jury found Hernandez acted with malice or fraud by clear and convincing evidence.

exemplary damages amount considering *Kraus* factors; similar requirements found in Tex. Civ. Prac. & Rem.Code Ann. §§ 41.011 and 41.013); Tex. Civ. Prac. & Rem.Code Ann. § 41.008 (West 2008) (limitations on amount of recovery of exemplary damages in relation to economic damages).

■ If an appellate court finds that an award of exemplary damages is excessive, the court may suggest a remittitur. *Khorshid*, 257 S.W.3d at 757 (citing Tex. R.App. P. 46.3). If the remittitur is timely filed, the court must reform and affirm the trial court's judgment in accordance with the remittitur. *Id.* If the remittitur is not timely filed, the court must reverse the trial court's judgment. *Id.*

■ The judgment awarded the $2,500,000 found by the jury as exemplary damages for fraud. This amount was between the jury's highest exemplary damage award of $5 million for breach of fiduciary duty and its lowest exemplary damage award of $661,572.84 for conversion. We are not free to reweigh the evidence and set aside a jury verdict merely because we feel that a different result is more reasonable. *Ellis Cty. State Bank*, 936 S.W.2d at 685. Where a jury has probably considered improper items of compensatory damages in assessing exemplary damages, however, excessiveness may be indicated. *Preston Carter Co. v. Tatum*, 708 S.W.2d 23, 25 (Tex. App.-Dallas 1986, writ ref'd n.r.e.). As noted, the jury awarded $5 million in benefit of the bargain damages for fraud, improperly considering speculative lost profits, and it is probable the jury also considered the speculative lost profits in assessing exemplary damages. *See id.* (jury probably considered "improper and highly speculative" elements of damages in assessing exemplary damage amount;

therefore, amount of exemplary damages should be reduced).

Considering the *Kraus* factors, the evidence showed the nature of the wrong was Hernandez's intentional breaches of duty to his client. Although Hernandez's liability on each of SCNT's causes of action was established by default, SCNT introduced evidence regarding Hernandez's breaches of duty, self-dealing, and intent to cause harm. The evidence showed that SCNT and Hernandez had an attorney/client relationship; Hernandez used SCNT's name to raise money for the casino project without informing SCNT; made payments to himself from the funds he raised; sought to establish SCNT as a "domestic dependent Indian nation" until it furthered his own interest to challenge SCNT's standing; and attempted to start a new SCNT organization after SCNT's leadership questioned his actions and the trial court ordered him to cease acting on behalf of SCNT. At trial Hernandez continued to argue SCNT had ratified all of his actions by giving him full authority to manage the casino project, relying on documents that Hernandez himself had drafted. Each time it was asked, the jury found by clear and convincing evidence that Hernandez acted with malice or fraud.

The harm to SCNT, however, was economic rather than physical. *See Khorshid, Inc.*, 257 S.W.3d at 767. The character of the conduct involved was primarily limited to dishonesty and deceit. *See id.* While the degree of Hernandez's culpability was significant, the evidence showed that the funds Hernandez used were obtained from investors other than SCNT. The primary issue is precluding Hernandez from profiting from his fraud, as well as deterring similar disloyalty on the part of other fiduciaries. *See Preston Carter Co.*, 708 S.W.2d at 24. With respect to the situation and sensibilities of the parties con-

cerned, the relationship between the parties was fiduciary, but also was a business relationship in which both parties hoped to profit from the plans for the casino. *See Khorshid, Inc.*, 257 S.W.3d at 767; *see also Preston Carter Co.*, 708 S.W.2d at 24–25. In reviewing the extent to which the conduct offends a public sense of justice and propriety, we consider the high loyalty required of a fiduciary, but we also consider that SCNT's economic loss can be recovered through monetary damages. *See Preston Carter Co.*, 708 S.W.2d at 24; *Khorshid, Inc.*, 257 S.W.3d at 767.

After reviewing the entire record, applying the factors enumerated in *Kraus*, and considering the amount of compensatory damages properly recoverable, we conclude that exemplary damages are recoverable, but the $2,500,000 awarded to SCNT as exemplary damages in the judgment seems excessive in light of the harm. *See Paramount Nat'l Life Ins. Co. v. Williams*, 772 S.W.2d 255, 268 (Tex.App.-Houston [14th Dist.] 1989, writ denied) (appellate court suggested remittitur where exemplary damages awarded by jury were ten times actual damages, but "basic question" was whether insured or insurer would be charged with negligence of agent). We conclude a reasonable award of exemplary damages would be no more than $665,681.22, equivalent to the amount of actual damages properly recoverable, and that the award of $2.5 million is excessive by $1,834,318.78. *See Preston Carter Co.*, 708 S.W.2d at 25 (suggesting remittitur of exemplary damages where jury probably considered improper items of compensatory damages, but evidence supported some amount of exemplary damages after application of *Kraus* factors). This amount is approximately the same as the jury's smallest award of exemplary damages; it is reasonably proportional to the actual damages supported by the evidence; and, as detailed above, it

considers each of the factors outlined in *Alamo National Bank v. Kraus*. As with the award of actual damages, we suggest a remittitur in the amount of $1,834,318.78. We otherwise overrule Hernandez's issues challenging the jury's awards of exemplary damages.

CONCLUSION

We affirm the trial court's imposition of sanctions and striking of Hernandez's pleadings. We conclude the jury's award of actual damages is excessive in the amount of $683,239.53, and the jury's award of exemplary damages is excessive in the amount of $1,834,318.78, and suggest remittiturs. In accordance with rule 46.3 of the Texas Rules of Appellate Procedure, if appellee files with this Court, within fifteen days of the date of this opinion, a remittitur to $665,681.22 with respect to actual damages, and a remittitur to $665,681.22 with respect to exemplary damages, the trial court's judgment will be modified and affirmed. If the suggested remittiturs are not timely filed, the trial court's judgment will be reversed and the cause will be remanded. In all other respects, we affirm the trial court's judgment.

**SUPPLEMENTAL OPINION**

On March 31, 2011, this Court issued its original opinion in this case, in part suggesting a remittitur to $665,681.22 with respect to the actual damages awarded to appellee Sovereign Cherokee Nation Tejas, and a remittitur to $665,681.22 with respect to exemplary damages awarded to appellee Sovereign Cherokee Nation Tejas. This Court's opinion provided that if such remittiturs were filed by appellee within fifteen days of the date of the opinion, the trial court's judgment would be modified and affirmed.

On April 14, 2011, appellee timely filed with the clerk of this Court a Voluntary Consent to Suggestion of Remittiturs. In that filing, appellee requested that this Court modify the trial court's judgment consistent with our opinion and judgment in this matter. Therefore, we issue this supplemental opinion. In accordance with our original opinion of March 31, 2011 and appellee's timely remittiturs, the portions of the trial court's judgment awarding appellee $5,000,000.00 in actual damages and $2,500,000.00 in exemplary damages are reformed to award appellee $665,681.22 in actual damages and $665,681.22 in exemplary damages. *See* Tex.R.App. P. 46.3. Further, the portions of the trial court's judgment relating to actual damages and exemplary damages are affirmed as reformed. *See id.* This Court's original opinion remains otherwise in effect.