**Opinion issued September 10, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00779-CV

_____

### POINTE WEST CENTER, LLC, Appellant

### V.

### IT'S ALIVE, INC. AND SHAMIL QURESHI, INDIVIDUALLY, AND AS AGENT FOR, IT'S ALIVE, INC., Appellees

On Appeal from County Civil Court at Law No. 1
Harris County, Texas
Trial Court Case No. 1022800

## O P I N I O N

Pointe West Center, LLC filed suit against its former tenant, It's Alive, Inc., and the tenant's guarantor, Shamil Qureshi, for breach of contract. The jury awarded some, but not all, of the claimed damages. The trial court did not award attorneys' fees to Pointe West. Both sides appealed. In two issues, Pointe West

argues the trial court erred by denying its motion for judgment notwithstanding the verdict on damages and by failing to award any attorneys' fees. In their cross-appeal, It's Alive and Qureshi[1] argue the evidence was insufficient to support the damages that the jury awarded.[2]

We affirm, in part, and reverse and remand, in part.

## Background

Pointe West is the landlord for a shopping center along Interstate 10 in Houston, Texas. In August 2007, Pointe West and It's Alive entered into a five-year lease agreement with Qureshi as a guarantor. Under the lease, It's Alive operated a restaurant and bar, called Frank-N-Stein, in the shopping center. The lease term expired on August 15, 2012. The lease agreement contains provisions regarding the conditions It's Alive's space had to be in at the surrender of the lease. The lease also includes a holdover provision, which provides:

> If Tenant shall remain in possession of the Leased Premises after the expiration or sooner termination of this Lease, then Tenant shall be a tenant at will, terminal at any time, and shall be liable for One and one half the Base Rent in effect at the expiration or sooner termination of this Lease, and shall be subject to all of the other obligations of Tenant under this Lease. Additionally, Tenant shall pay Landlord all

---

[1] Because none of the issues raised in this appeal require a distinction between It's Alive, Inc. and Shamil Qureshi, we will refer to them, in their capacity as parties to this appeal, collectively as It's Alive through the remainder of this opinion.

[2] It's Alive identified three issues in its cross-appeal, but all three concern the legal sufficiency of the jury's damage award based on the argument that there is insufficient proof of reasonable and necessary damages. Accordingly, we treat them as a single issue.

2

actual damages sustained by Landlord on account of such holding over by Tenant. Nothing contained in the foregoing, however, shall be construed as the consent to any holding over by Landlord.

The lease also provides that any amendments or modifications to the lease were required to be in writing and signed by both parties.

In May 2012, It's Alive sent a letter informing Pointe West that it did not intend to renew the lease and that it was looking for someone to purchase the restaurant and enter into a new lease with Pointe West. The letter also requested that, upon the expiration of the lease, It's Alive be able to remain in the space on a month-to-month rent basis at their current rent until it was able to find a new occupant or could no longer sustain running the business. Pointe West never sent a written response to the letter.

After the expiration of the lease term, It's Alive submitted its regular rental payments to Pointe West for the months of August and September. On September 27, 2012, Qureshi spoke with Farhad Behzadi, a consultant for the shopping center. Qureshi asked to stay another month. Behzadi told Qureshi he could stay if he paid $15,000. After that, It's Alive decided to vacate the premises.

During the process of vacating the premises, It's Alive damaged the space. A few days after It's Alive vacated the space, Pointe West discovered the damage. Pointe West immediately began repairing the damages to the space while preparing

3

the premises for a future tenant. Pointe West sued It's Alive for breach of contract, conversion, and trespass to chattels.

At trial, photographs admitted into evidence showed, among other things, mold on a wall from a water leak, multiple holes in the drywall, damaged ceiling tiles, damage to the bar on the premises, damage to booth platforms, and exposed wires hanging from the ceiling. There was also evidence that It's Alive left drains to both the bar and sink clogged, and ripped A/C thermostats out of the walls. Behzadi testified that some of the damage to the bar and other fixtures served no apparent purpose for It's Alive to vacate the premises.

To establish their damages from It's Alive's vacating the premises, Pointe West presented numerous checks, receipts, and timesheets. A few of the checks were attached with invoices. One of the invoices connected the cost with It's Alive's premises; the remainder did not. The receipts likewise have no accompanying information explaining the purpose and use of the purchases. The timesheets only reflect the person who did some work and the amount of time worked in the reported time period.

Behzadi was Pointe West's only damages witness. He asserted that it cost Pointe West $57,373 to repair the premises to ready it for a new tenant. He testified that he did not know the details of the purchases made, how the items were applied, or the specific work done by the people who did repairs. Behzadi

4

explained that, just before trial, he talked to the property manager, who explained to Behzadi some of the detail of the work performed. For the exhibits admitted at trial to prove damages, Behzadi testified that they collectively represented the documents produced to It's Alive in response to discovery requests. Behzadi testified that, to respond to the requests for production, he had instructed the accountant to "put everything together that ha[d] anything to do with the repairs done at this space."

Behzadi testified that much of the work done on the premises was done by "in-house contractors." Behzadi explained, "These are . . . in-house contractors that don't necessarily even work for just the shopping center. They work for all of our properties." On cross-examination, Behzadi acknowledged that some of the time reported in the timesheets could not have included work for repairs on the premises in question. No testimony was presented, however, to show what amount of the time reported on each of the timesheets was attributable to It's Alive's space. For example, for one timesheet included in the record, the following exchange took place:

> Q   And you're saying that all 80 hours that are shown on this time sheet were devoted to It's Alive's space?
>
> A   No, I'm not saying that.
>
> Q   Okay. What portion of the 80 hours was attributable to It's Alive's space?

A        I wouldn't know—I wouldn't know exactly, but my guess would be anything from that October 1st or October 2nd when we discovered the space.

Q        All right. So you have no idea of what portion of this would be attributable to It's Alive's space?

A        I can have an educated guess, but no sure way of knowing, no.

Similarly, Behzadi admitted that, for at least some of the checks admitted into evidence, the entire amount paid would not be attributable to work performed to repair It's Alive's space.  He also testified that some unidentified amount of purchases on the receipts did not go to repairs of It's Alive's space.  Behzadi testified that he told the person that came up with the $57,373 damage amount to exclude the purchases on the receipts that were not applied to the repairs to It's Alive's space.  There was no explanation, however, of how that person knew which items did not apply or of which items listed on the receipts that person had excluded from the calculation.  When he was asked how specific items on the receipts applied to the repair of It's Alive's space, Behzadi replied that he did not know.

Another matter in dispute during trial concerned whether Pointe West had agreed to let It's Alive remain on the premises after the expiration of the lease at the original monthly-rent rate.  It's Alive claimed that Pointe West had agreed to this, waiving the application of the hold-over penalties under the lease.  Specifically, Qureshi testified that Behzadi authorized It's Alive to remain on the

6

premises at the regular rent rate while It's Alive looked for someone to buy the business and execute a new lease for the premises. Behzadi testified he could not recall whether he agreed to allow It's Alive to stay in the space.

After Pointe West rested its case-in-chief, It's Alive moved for an instructed verdict on all claims, including the argument that Pointe West had failed to sufficiently prove its damages. The trial court denied the motion.

The jury determined that It's Alive had breached the lease agreement. It awarded $15,000 for the cost to repair the premises and $0 for the holdover penalty. Pointe West moved for a judgment notwithstanding the verdict regarding the holdover penalty damages. The trial court denied the motion, rendering a judgment in conformity with the jury's verdict but without awarding attorneys' fees.

## Damages

In its cross-appeal, It's Alive argues the evidence is legally insufficient to support the jury's damage award.

## A.    Standard of Review

"The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In performing a legal-sufficiency review, we must credit favorable evidence if

reasonable fact finders could credit it and disregard contrary evidence unless reasonable fact finders could not disregard it. *Id.* A "no evidence" point of error must be sustained when (a) the record discloses a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidenced offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810–11. A legal sufficiency challenge of a finding fails when more than a scintilla of evidence supports the finding. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). "'More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair minded people to differ in their conclusions.'" *Id.* at 388 (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)).

## B. Preservation

Pointe West contends It's Alive failed to preserve it's legal sufficiency issue. To preserve an issue for appellate review, the record must show the complaint was made to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1. A legal sufficiency challenge may be preserved by (1) a motion for a directed verdict, (2) a motion for a judgment notwithstanding the verdict or to disregard the jury's answer to a vital fact issue, (3) an objection to submitting an issue to the

8

jury, or (4) a motion for a new trial. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991).

Pointe West acknowledges that It's Alive moved for an instructed verdict. It asserts, however, that It's Alive did not preserve error for the sufficiency of the damages award. A motion for a directed verdict must state the specific grounds which entitle the requesting party to a directed verdict. TEX. R. CIV. P. 268.

After Pointe West rested its case-in-chief, It's Alive moved for a directed verdict. During the hearing on the motion for directed verdict, It's Alive asserted,

> Basically there were a lot of expenses that went to the common accounting department for the shopping center and apartment complex owned by [Pointe West]. At some point in time the accountant gathered those together. There's no specific estimates as to what was done, what kind of work was done, so it's impossible for [Pointe West] to show that the actual repairs done were reasonable and necessary.

"A party seeking to recover remedial damages must prove that the damages sought are reasonable and necessary." *McGinty v. Hennen*, 372 S.W.3d 625, 627 (Tex. 2012) (citing *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 200 (Tex. 2004)). It's Alive's motion for instructed verdict, then, specifically relates to Pointe West's proof of damages. We hold this issue has been preserved for appeal.

9

## C.   Analysis

Pointe West sought $57,373 in damages.  The jury awarded $15,000.  It's Alive argues that the evidence is legally insufficient to support the jury's award.  Specifically, It's Alive argues that the evidence is insufficient to establish how much Pointe West actually spent on repairing the damage caused by It's Alive or to show that those expenditures were actually reasonable and necessary.

"The trier of fact is given broad discretion to award damages within the range of evidence presented at trial."  *Powell Elec. Sys., Inc. v. Hewlett Packard Co.*, 356 S.W.3d 113, 126 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  "However, this principle presumes there has been competent evidence of a range of damages."  *Bigham v. Se. Tex. Envtl., LLC*, 458 S.W.3d 650, 670 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

To recover costs incurred for remedial damages flowing from a breach of contract, the plaintiff must establish that the repairs were reasonable and necessary.  *McGinty*, 372 S.W.3d at 627.  "To establish that, the plaintiff must show more than simply the nature of the injuries, the character of and need for the services rendered, and the amounts charged therefor."  *Id.* (internal quotations omitted).  Likewise, proof of amounts charged or paid does not prove that the amounts were reasonable.  *Mustang Pipeline*, 134 S.W.3d at 200–01.

Pointe West presented ample evidence of the injury caused as It's Alive vacated the premises. The same cannot be said for Pointe West's proof of damages. Pointe West presented numerous checks, receipts, and timesheets. However, Behzadi, Pointe West's only witness for damages, admitted that the checks, receipts, and timesheets included costs that were not incurred in repairing It's Alive's space. Behzadi was not involved in collecting the documents that were presented as proof for damages at trial, and he had no personal knowledge about the details of any of the exhibits. No testimony or exhibit was presented to specifically identify what costs should be included as part of Pointe West's claim for damages.[3]

Behzadi testified that much of the work done on the premises was done by in-house contractors who did work for all of Pointe West's properties, including more than just the shopping center in which It's Alive's space was located. None of the evidence offered any differentiation between work done in It's Alive's space, in other spaces within the shopping center, or at locations beyond the shopping center. When asked to identify which portion of a timesheet admitted into evidence was directly attributable to work performed in It's Alive space, Behzadi admitted he could only guess.

---

[3] Similarly, the contract provided that It's Alive was not responsible for costs related to repairing normal wear and tear. There is no evidence in the record of what portion of the costs incurred, if any, concerned repair of normal wear and tear.

11

In its cross-appellee's brief, Pointe West points to certain portions of Behzadi's testimony to show that it carried its burden of proving damages. The bulk of that testimony involves Behzadi describing the photographs admitted into evidence. Those photographs were taken after It's Alive vacated the premises but before repairs were made. In the course of this testimony, Behzadi also generally described work that was done to repair the premises. The pictures of the premises after It's Alive left establish injury, not damages. *See McGinty*, 372 S.W.3d at 627 (holding plaintiff seeking to prove remedial damages must show more than nature of injuries, need for services rendered, and amounts charged). Likewise, while general descriptions of repair work performed is relevant to whether the repairs were necessary, they do not establish that the costs incurred in that process were reasonable. Nor did any portion of Behzadi's testimony establish with any reasonable particularity what the costs of repair actually were.

Pointe West's evidence failed to establish the actual costs of repair. While the record indicates that at least some of the costs admitted into evidence were related to the repair of It's Alive's premises, the jury could only speculate about what portion of the damages evidence actually pertained to that space. *See Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 64 (Tex. App.— Houston [1st Dist.] 2013, pet. denied) (holding plaintiff cannot recover breach of contract damages that are speculative). Because there was no proof of the actual

amount of damages, there was no proof that the damages presented were reasonable or necessary. *See McGinty*, 372 S.W.3d at 627 (holding plaintiff must prove that repairs were reasonable and necessary).

"Ordinarily, appellate courts render judgment when sustaining a no-evidence issue." *CCC Grp., Inc. v. S. Centl. Cement, Ltd.*, 450 S.W.3d 191, 203 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Guevara v. Ferrer*, 247 S.W.3d 662, 670 (Tex. 2007)). "However, when there is evidence to support some damages it is not appropriate to render judgment." *Guevara*, 247 S.W.3d at 670. In that situation, we must remand for a new trial unless a remittitur would be appropriate. *CCC Grp.*, 450 S.W.3d at 203; *see also* TEX. R. APP. P. 46.3.

"An appellate court may suggest a remittitur on its own motion when an appellant complains that there is insufficient evidence to support an award and the appellate court agrees, but there is sufficient evidence to support a lesser award." *Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 889 (Tex. App.—Austin 2006, pet. granted and remanded by settlement agreement); *accord Hernandez v. Sovereign Cherokee Nation Tejas*, 343 S.W.3d 162, 176 (Tex. App.—Dallas 2011, pet. denied). We have held that there appears to be some evidence of the damages incurred in repairing It's Alive's premises but that the actual amount of damages is indeterminable. Accordingly, remittitur would not

be appropriate. *See Springs Window Fashions*, 184 S.W.3d at 889. We must, then, remand for a new trial. *See CCC Grp.*, 450 S.W.3d at 203.

When liability is contested, courts may not grant a new trial on unliquidated damages solely. TEX. R. APP. P. 44.1(b). Instead, we must remand for a new trial on both liability and damages. *See CCC Grp.*, 450 S.W.3d at 203. Because It's Alive disputes liability, and the cost of repairs constitute unliquidated damages, we must remand for a new trial on both liability and damages. *See id.*

We sustain It's Alive's cross-issue.

### Holdover

In its second issue, Pointe West contends the trial court erred by denying its motion for judgment notwithstanding the verdict on the jury's failure to award holdover damages.

### A. Standard of Review

A trial court may disregard a jury's verdict and grant a judgment notwithstanding the verdict if a directed verdict would have been proper. TEX. R. CIV. P. 301; *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991). We review the grant or denial of a motion for judgment notwithstanding the verdict under a legal sufficiency standard. *Tanner v. Nationwide Mut. Fire Ins. Co.,* 289 S.W.3d 828, 830 (Tex. 2009). We incorporate the legal-sufficiency standard stated above.

14

An appellant attacking the legal sufficiency of an adverse finding on an issue on which it had the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The appellant must show that there is no evidence to support the fact finder's finding and that the evidence conclusively establishes the opposite of the finding. *See id.*

**B.    Analysis**

In its motion for judgment notwithstanding the verdict, Pointe West argues that the lease agreement with It's Alive contained a hold-over provision, which applied a set penalty for remaining on the premises after the lease expired; that It's Alive remained on the premises for a set, determinable period of time after the lease expired; and that, accordingly, the jury was obligated to award it damages pursuant to the hold-over provision. The trial court denied the motion. Pointe West raises the same argument on appeal.

The jury determined that It's Alive breached the lease agreement, but the jury charge did not require the jury to identify which specific portions of the lease were breached. The jury awarded damages for Pointe West's cost of repair. Necessarily, then, the jury determined It's Alive had breached the relevant portion of the lease. Because the jury did not award damages for Pointe West's claim of breach of the holdover provision, the jury did not necessarily determine that the

15

holdover provision had been breached. If the evidence would support a jury's determination that this provision was not breached, then, we must affirm this implied finding. *See City of Keller*, 168 S.W.3d at 827 (holding appellate courts performing legal-sufficiency review must credit favorable evidence if reasonable fact finders could credit it and disregard contrary evidence unless reasonable fact finders could not disregard it); *Dow Chem.*, 46 S.W.3d at 241 (holding appellant attacking legal sufficiency on issue for which it carried the burden of proof must prove that no evidence supports jury's finding and that opposite is established conclusively).

It's Alive argues, at trial and on appeal, that it did not breach the holdover provision because the parties agreed to modify it. Specifically, It's Alive argues that the parties agreed that it could remain on the premises after the lease expired at its original monthly base-rent rate. Pointe West responds that the lease contained a provision requiring all amendments to the lease to be in writing. It is undisputed that there was no written agreement to allow It's Alive to alter the hold-over provision of the lease or in any other way allow It's Alive to remain on the premises at the monthly base-rent rate after the lease expired. We hold that this is not dispositive, however.

"[A] written contract not required by law to be in writing, may be modified by a subsequent oral agreement even though it provides it can be modified only by

a written agreement." *Robbins v. Warren*, 782 S.W.2d 509, 512 (Tex. App.—Houston [1st Dist.] 1989, no writ) (citing *Mar-Lan Indus., Inc. v. Nelson*, 635 S.W.2d 853, 855 (Tex. App.—El Paso 1982, no writ)); *accord Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 808 (Tex. App.—Dallas 2008, pet. denied); *Double Diamond, Inc. v. Hilco Elec. Co-op., Inc.*, 127 S.W.3d 260, 267 (Tex. App.—Waco 2003, no pet.). "Such a written bargain or agreement is of no higher legal degree than an oral one, and either may vary or discharge the other." *Mar-Lan*, 635 S.W.2d at 855. Accordingly, proof that a contract provision requires modifications to be in writing does not establish as a matter of law that the parties did not modify the contract orally. *See Robbins*, 782 S.W.2d at 512; *Mar-Lan*, 635 S.W.2d at 855.

A lease of real estate for a term longer than one year is subject to the statute of frauds and is required by law to be in writing. TEX. BUS. & COM. CODE ANN. § 26.01(a)(1), (b)(5) (Vernon 2015). Once the main lease expired, the agreement—either under the holdover provision of the lease or the oral agreement—was on an agreed month-to-month basis for an indefinite period. This is referred to as a tenancy at will.[4] *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 915–16 (Tex. 2013). A tenancy at will is not subject to the statute of frauds. *Robb v. San Antonio St. Ry.*, 18 S.W. 707, 708–09 (Tex. 1891);

---

[4] The hold-over provision specifically referred to this period as a tenancy at will.

*cf. Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775–76 (Tex. 1974) (holding indefinite-term employment agreements are considered performable within one year and, accordingly, are not subject to the statute of frauds).  Because the agreement to stay beyond the duration of the main lease is a tenancy at will—and, accordingly, not subject to the statute of frauds—any oral agreement by the parties concerning the tenancy at will was not a contract required by law to be in writing. Thus, the lease provision requiring all modifications to be in writing is not a bar to recovery.[5]  *See Robbins*, 782 S.W.2d at 512; *Mar-Lan*, 635 S.W.2d at 855.

A contract modification must satisfy all the essential elements of a contract. *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986).  There must be both a meeting of the minds and new consideration to support the modification.  *Id.*

The evidence shows that Qureshi sent Pointe West a letter explaining that It's Alive was not going to renew the lease, that he was looking for a someone to purchase the restaurant and continue the business in that location, and that he wanted to remain at the location at the existing monthly-rent basis until he was able to find a purchaser.  At trial, Qureshi testified that, close to the expiration of

---

[5]     It is worth noting that Pointe West never asserted the applicability of the statute of frauds at any stage of trial or on appeal.  The application of a statute of frauds is an affirmative defense.  TEX. R. CIV. P. 94.  Even if the statute of frauds were otherwise applicable, then, Pointe West cannot rely on its application on appeal because it never asserted the affirmative defense at trial.  *See MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 136–37 (Tex. 2014) (holding affirmative defenses cannot be raised for first time on appeal).

18

the lease, he began looking for someone to buy the restaurant and continue operating it at the monthly base-rent rate. He testified that he spoke to Behzadi about remaining on the premises and continuing to operate the business while he continued to look for a purchaser of the business. Qureshi said that Pointe West agreed to let It's Alive remain on the premises at the monthly base-rent rate "but that we needed to, you know, come forward with any . . . leads that we had or anybody that was interested in the bar." Qureshi explained that this agreement would benefit Pointe West "by finding them a tenant that's going to stay . . . at that location so there would be no break in their timeframe of the lease." Behzadi recalled having conversations with Qureshi during the time period in question but could not recall whether he agreed to allow It's Alive to stay in the space.

We hold there is some evidence in the record to support an implied determination by the jury that Pointe West agreed to allow It's Alive to remain on the premises at the monthly base-rent rate in exchange for It's Alive looking for prospective tenants to take over the existing business and presenting them to Pointe West. *See id.* Because there is some evidence to support an oral modification of the contract, the lease provision requiring all modifications to be in writing is not an absolute bar to recovery. *See Robbins*, 782 S.W.2d at 512. While it was evidence for the jury to consider, the jury could have reasonably determined that

the oral modification of the lease contained an implicit agreement to suspend or modify the modification-in-writing provision. *See Mar-Lan*, 635 S.W.2d at 855.

We hold Pointe West failed to establish as a matter of law that it was entitled to a recovery for its claim of breach of the holdover provision of the lease. *See City of Keller*, 168 S.W.3d at 827; *Dow Chem.*, 46 S.W.3d at 241 Accordingly, we overrule Pointe West's second issue.

## Attorneys' Fees

In its first issue, Pointe West argues the trial court abused its discretion by failing to award attorneys' fees. A party can recover attorneys' fees for breach of contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 2015). Likewise, the lease agreement between the parties allows the recovery of attorneys' fees. In both of these situations, however, the party seeking attorneys' fees must first prevail.[6] *See Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 40 (Tex. 2012) (holding, in order to qualify for attorneys' fees under section 38.001, "a litigant must prevail on a breach of contract claim and recover damages."). Because we have reversed the award for breach of contract based on reasonable and necessary costs of repair and because we have affirmed the trial

---

[6] The relevant contract provision provides, in pertinent part, "[I]n the event either party hereto retains an attorney for the purpose of enforcing any claims or demand arising out of or connected with this Lease . . . the *prevailing party* shall be entitled to entitled to recover . . . all of such party's . . . reasonable attorney's fees." (Emphasis added.)

court's denial of Pointe West's motion for judgment notwithstanding the verdict, Pointe West currently has not prevailed on any matter entitling it to attorneys' fees. Because we have remanded for new trial one of Pointe West's breach of contract claim, we must also remand its claim for attorneys' fees related to this claim. *See Strebel v. Wimberly*, 371 S.W.3d 267, 285 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (reversing and remanding award of attorneys' fees because court reversed and remanded claim supporting attorneys' fees).

## Conclusion

We reverse the trial court's award of damages for breach of contract based on reasonable cost of repair and remand that issue for a new trial on liability and damages. Because we have reversed this issue, we must also remand the matter of attorneys' fees for a new trial. We affirm the remainder of the judgment.


Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Brown.