

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-24-00124-CV

ANTHONY L. TURNER, APPELLANT

V.

PABLO GARCIA AND CLAUDIA MENDOZA, APPELLEES

On Appeal from the 345th District Court
Travis County, Texas
Trial Court No. D-1-GN-17-006407, Honorable Jessica Mangrum, Presiding

August 20, 2024

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

This appeal[1] arises out of a real estate dispute between Appellant Anthony L. Turner (defendant below) and Appellees Pablo Garcia and Claudia Mendoza (collectively referred to as "Garcia"). Garcia alleged that Turner breached a contract and committed fraud in the sale of a home involving a "wrap mortgage." On December 7, 2023, the trial

[1] This cause was originally filed in the Third Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

court ordered that Garcia was entitled to recover from Turner for breach of contract, fraud, and statutory fraud.[2] The court awarded damages of $89,910.46, plus $6,172.80 in attorney's fees.

Turner seeks reversal of the judgment and remand to the trial court for reevaluation of the evidence. Garcia did not file a response. Because we find the evidence is insufficient to support the damages awarded and liability remains contested, we reverse the judgment and remand for a new trial. TEX. R. APP. P. 44.1(b).

**Background**

The trial record is brief: 86 pages of trial proceedings and fewer than 50 pages of testimony. Below, we present our best understanding of this limited record.

Garcia sought to purchase a home. Pablo testified that English is not his primary language, and he sometimes struggles to read English documents. On September 19, 2011, Garcia signed a real estate contract with Turner to purchase residential property for $169,000. The terms included a $15,000 cash down payment and a $154,000 promissory note. The note required 96 monthly principal payments of $1,045.33, starting October 1, 2011, plus monthly interest payments at 7.2%.

On September 30, 2011, Turner and his wife executed a general warranty deed for the property with vendor's lien in favor of Garcia. The deed detailed an existing lien securing Turner's debt of $160,000 to "MERS," acting solely as nominee for DHI Mortgage Company, Ltd. The deed also described Garcia's purchase money note as a "wrap note"

---

[2] *See* TEX. BUS. & COMM. CODE ANN. § 27.01.

2

secured by a vendor's lien retained in the deed and deed of trust "of even date." At trial, Turner explained that this "wrap note" encompassed his existing debt to MERS.[3] The vendor's lien states, "The vendor's lien against and superior title to the property are retained until each note described is fully paid according to its terms, at which time this deed shall become absolute." Pablo testified that he learned of Turner's preexisting debt on the property at closing.

Initially, Garcia made payments on the property through a third-party management company arranged by Turner.[4] Pablo testified that the management company was sold, and he was unable to contact the new company. Turner said that around "[20]13, [20]12," he received a notice of intent to foreclose from his mortgage lender, citing a six-month payment delinquency. Upon notifying Garcia, Turner learned that payment was not made because Garcia was uncertain about where to send it. Garcia immediately brought the account current, and Turner instructed Garcia to make future payments directly to the lender, bypassing the management company.[5]

On July 1, 2017, Turner approached Pablo with a one-page document, requesting signatures from Garcia to prove "you're the owner and you made the payments for the

---

[3] In simple terms, a "wrapped note" is a financing arrangement where a new loan encompasses the new lender's (i.e., Turner's) existing debt obligations, permitting him to service those debts from the new borrower's (i.e., Garcia's) payments. The new indebtedness remains junior in priority to the existing lien. *See W. Fed. Sav. & Loan Asso. v. Atkinson Fin. Corp.,* 747 S.W.2d 456, 459 (Tex. App.—Fort Worth 1988, writ dism'd).

[4] Turner testified that this arrangement facilitated payments from Garcia to the management company, which then remitted to Bank of America, where the underlying debt remained in Turner's name.

[5] When the trial court inquired if this incident prompted Turner's decision to foreclose, Turner responded, "No, I didn't foreclose—I still—I got it caught up and still let him stay in the house."

other home." Despite Mendoza's absence, Pablo signed both names the same day.[6] Pablo claimed he was unaware of the document's purpose at the time, but later learned he had signed a warranty deed conveying the property back to Turner. Turner asserted he presented the entire document and sought the transfer because Garcia "wasn't making [] payments up to that point."[7] In any event, a "cancellation of general warranty deed" was filed and recorded on March 22, 2018, with an intent of undoing the property transfer.[8]

Shortly after Turner approached Pablo with the transfer document, Turner also took action to "foreclose" on the property. According to a substitute trustee's deed and a correction deed, Turner alleged Garcia defaulted on the deed of trust securing the $154,000 purchase money note. The note was accelerated. Eventually, the property was sold on June 5, 2018, at a foreclosure sale for $151,671.93. Pablo testified he was unaware of the foreclosure proceedings.

The trial court found Turner liable for breach of contract, common law fraud, and statutory fraud. However, despite awarding damages of $89,910.46 to Garcia, the court's findings of fact and conclusions of law lack specificity regarding what that total constitutes. The findings mention damages only once, in the following context:

> 17. For all these reasons, this Court found that Defendant was liable to the Plaintiffs for his failure to convey title and awarded the Plaintiffs their attorney's fees.

---

[6] Curiously, a notary's signature attests to the authenticity of both Garcia's and Mendoza's signatures, despite Mendoza's absence.

[7] Garcia maintained he was current on note payments when he signed. Evidence indicates Turner later offered to sell the property back to Garcia for $165,000, with partial funding from unspecified third-party financing. This document was never executed.

[8] This instrument purports to cancel the July 1 deed and reinstate "in full force and effect" the original $154,000 purchase money note.

18. As a result of the foreclosure on the Property, the law firm of Miller, George, and Suggs, PLLC, has certain surplus monies from the sale of the Property.

19. This Court ordered that those proceeds be distributed to the Plaintiffs as damages.

**Analysis**

First Issue: Breach of Contract

Turner's first issue argues that the trial court erred in finding he breached his contractual responsibilities, claiming the evidence "conclusively"[9] showed Garcia breached the contract first. In essence, Turner contends he was justified in foreclosing because Garcia failed to make payments in 2012 or 2013, up to six years prior. We reject this argument for two reasons.

First, although a prior breach may sometimes excuse future performance, this is an affirmative defense that must be pleaded and proved. *See* TEX. R. CIV. P. 94; *1 Fox 2 Prods., LLC v. Mercedes-Benz USA, LLC,* No. 03-20-00101-CV, 2021 Tex. App. LEXIS 77, at *16 (Tex. App.—Austin Jan. 7, 2021, no pet.) (mem. op.). *See also generally Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006) (identifying "prior material breach" as an affirmative defense). Turner's general denial did not allege Garcia's earlier non-payment as an excuse, thus waiving this defense. *1 Fox 2 Productions*, 2021 Tex. App. LEXIS 77, at *16.

---

[9] The Supreme Court of Texas has defined "conclusive evidence" to mean that evidence upon which "reasonable people could not differ in their conclusions." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

Second, even if tried by consent, the trial court could reasonably reject a "prior material breach" defense based on the evidence. Non-material breaches do not excuse nonperformance. *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017). Materiality of a breach is typically a fact question, only decided as a matter of law if reasonable minds could not differ. *Id.* It considers factors such as, "the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance." *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994).

Here, the evidence shows that about six years passed between Garcia's missed payments (due to issues with the management company Turner selected) and Turner's foreclosure. Notably, when the trial court asked whether Garcia's non-payment prompted Turner's decision to foreclose, he responded, "No, I didn't foreclose—I still—I got it caught up and still let him stay in the house." This evidence indicates Turner did not consider Garcia's earlier non-payment a material breach at the time, and the record shows no evidence of Turner being deprived of any contractual benefit.

Because the pleadings and evidence both reasonably permitted the trial court to reject Turner's claim of a prior material breach by Garcia, we overrule Turner's first issue.

Second Issue: Fraud

At common law, a claim of fraud requires proof that a defendant made (1) a false, material misrepresentation (2) the party either knew was false or asserted recklessly without knowledge of its truth (3) with the intent that the misrepresentation be acted upon, (4) and the person to whom the misrepresentation was made acts in reliance upon the

6

misrepresentation (5) and is injured as a result. *All Am. Tel., Inc. v. USLD Communs., Inc.,* 291 S.W.3d 518, 527 (Tex. App.—Fort Worth 2009, pet. denied).[10] Turner's second issue pertains only to the first element: whether he made a false, material misrepresentation. He argues:

- He provided a "credible" explanation for asking Garcia to sign the general warranty deed in July 2017; and

- Garcia could not have justifiably relied on oral misrepresentations that conflicted with the warranty deed's unambiguous terms.

However, these arguments misapply the standard of review. A review for legal sufficiency views the evidence in the light most favorable to the challenged finding and indulges every reasonable inference that would support it. *City of Keller,* 168 S.W.3d at 822, 827. A finding is supported if more than a scintilla of evidence exists, allowing reasonable people to differ in their conclusions. *Gharda USA, Inc. v. Control Sols., Inc.,* 464 S.W.3d 338, 347 (Tex. 2015). For factual sufficiency, we set aside a finding only if the credible evidence supporting it is so weak, or so contrary to the overwhelming weight of all evidence, that a new trial should be ordered. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner,* 505 S.W.3d 580, 615 (Tex. 2016).

Turner's second issue fatally depends on facts in his favor and relies on an assumption that his testimony was truthful. Under the applicable standard of review, we cannot make these assumptions. Instead, under the proper standard, we find evidence

---

[10] Statutory fraud elements are essentially identical, except they do not require proof of knowledge or recklessness for actual damages recovery. *Lindley v. McKnight,* 349 S.W.3d 113, 128 (Tex. App.—Fort Worth 2011, no pet.).

to support Garcia's account that Turner misrepresented the purpose of the general warranty deed and presented only the signature page, not the page indicating property transfer. We overrule Turner's second issue.

Third Issue: Damages

Turner's third issue challenges the trial court's award of damages. We reject his attempt to reargue his first two points and focus on whether sufficient evidence supports the $89,910.46 damages award. An appellate court reviews a trial court's findings of fact for legal and factual sufficiency using the same standards applied to a jury verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). The trial court's determination of damages must fall within the range of evidence presented; the factfinder may not arbitrarily assess damages without sufficient evidentiary support. *CCC Group, Inc. v. S. Cent. Cement, Ltd.*, 450 S.W.3d 191, 200 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Importantly, when a trial court makes findings of fact, we may not presume findings not explicitly made in the record, except in circumstances inapplicable here. *See* TEX. R. CIV. P. 299 (permitting presumed findings on "any ground of recovery or defense" when an element has been included in the findings of fact); *Curton v. Craddock*, 252 S.W. 1075, 1076 (Tex. App.—Austin 1923, no writ) (refusing to presume additional findings when incorrect measure damages was submitted).

The trial court's findings of fact and conclusions of law fail to clearly explain how it arrived at the $89,910.46 damages award for Garcia. The court found Turner liable "for

8

his failure to convey title" and noted the existence of surplus funds[11] following the 2018 foreclosure sale. It then stated that it "ordered that those proceeds be distributed to the Plaintiffs as damages." However, this finding is ambiguous: does it represent the court's measure of damages, or is it merely identifying a source from which damages can be recovered?

This ambiguity necessitates a closer examination of the evidence in the record. If the court intended to award damages to Garcia for Turner's wrongful foreclosure on the property, the proper measure would be "the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the indebtedness." *Farrell v. Hunt*, 714 S.W.2d 298, 299 (Tex. 1986). However, the record presents conflicting and incomplete information about Garcia's payments:

1. The contract required Garcia to make 96 monthly installment payments of principal, plus interest.

2. Pablo testified affirmatively when asked if he made "all your payments the way you were supposed to."

3. The record identifies only 62 monthly installment payments of $1,045.33 each.

4. There is no evidence of the remaining principal payments or any interest payments.

This discrepancy between Pablo's testimony and the documented payments, along with the lack of evidence regarding interest payments, makes it impossible to accurately determine the "remaining balance due on the indebtedness" at the time of foreclosure.

---

[11] A March 2023 letter from the law firm of Miller, George, and Suggs, PLLC, indicates the amount of surplus funds being held in trust is $34,792.25.

Consequently, we cannot ascertain whether the trial court's damage award aligns with the proper measure for wrongful foreclosure.

An alternative interpretation of the trial court's damages award suggests it may have intended to cancel the contract and refund money paid by Garcia. Our back-of-envelope calculation estimates that such a refund could be:

| | |
|---|---|
| 62 monthly installment payments | $64,810.46 |
| Down payment | $15,000.00 |
| Earnest money payment | $2,100.00 |
| **Total** | **$81,910.46** |

This estimate is precisely $8,000 less than the trial court's award of $89,910.46. However, we cannot presume this was the court's intention, given its other findings of fact. Notably, cancelling the sales contract directly conflicts with the court's finding suggesting Garcia possessed a present ownership interest in the real estate at the time of foreclosure. This creates a logical inconsistency: either Garcia owned the property at the time of the foreclosure sale, or they did not. The trial court's findings implausibly suggest both scenarios simultaneously.

Garcia filed no brief to potentially elucidate these conflicting (and hypothetical) theories about what the trial court intended. After our own careful review, and mindful that our role is to not second-guess the trial court's assessments of the witnesses, we find the evidence insufficient to support the $89,910.46 in damages awarded to Garcia against Turner. The trial court's failure to articulate a clear basis for its damage

calculation, coupled with the logical inconsistencies in its findings, renders the damages award unsupportable on the current record.

An appellate court may suggest a remittitur on its own motion when it finds insufficient evidence to support the full award but sufficient evidence for a lesser amount. *Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 889 (Tex. App.–Austin 2006, pet. granted and remanded by settlement agreement). While some evidence of damages exists in this case, the trial court's ambiguous findings regarding damages preclude us from determining the basis for the award. Suggesting a remittitur under these circumstances would require us to speculate about the trial court's intentions, which we cannot do. Therefore, remittitur is not appropriate here. *Pointe W. Ctr., LLC v. It's Alive, Inc.*, 476 S.W.3d 141, 150 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (remanding for new trial where the trial court's method of determining awarded damages was indeterminable).

Texas law prohibits granting a new trial solely on unliquidated damages when liability is contested. TEX. R. APP. P. 44.1(b). In this case, Turner disputes both liability and the amount of damages. Therefore, we must remand for a new trial on both liability and damages. *Pointe W. Ctr.*, 476 S.W.3d at 150. We sustain Turner's third issue.

Fourth Issue: Attorney's Fees

The award of attorney's fees to Garcia depends on their success in their breach of contract or statutory fraud claims. For breach of contract, Texas law requires a party to prevail and recover damages to be eligible for attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 and *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292

S.W.3d 660, 666 (Tex. 2009). The same is true for their claim for statutory fraud. *Jerry L. Starkey, TBDL, L.P. v. Graves*, 448 S.W.3d 88, 112 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding that because appellee "is not entitled to recover on his statutory-fraud claim [] he can no longer recover attorney's fees from [appellant].").[12]

Our decision to remand for a new trial pretermits our consideration of the fourth issue regarding Turner's liability for attorney's fees. Because we have reversed the award to Garcia, they have not prevailed on any matter entitling them to attorney's fees. In the new trial, the finder of fact must first determine liability on the underlying claims and damages. Therefore, on remand, the finder of fact will be responsible for assessing whether Turner is liable to pay Garcia's attorney's fees and, if so, in what amount.

## Conclusion

We reverse the trial court's award of damages for breach of contract and fraud, and remand the entire matter for a new trial. We accordingly remand the matter of attorney's fees for a new trial.

Lawrence M. Doss
Justice

---

[12] Attorney fees are not recoverable for common law fraud. *See Tony Gullo Motors,* 212 S.W.3d at 304.